## MIDLAND REALTY CO. *v.* KANSAS CITY POWER & LIGHT CO.

No. 217. Argued December 17, 1936.—Decided February 1, 1937.

*Mr. Elliott H. Jones,* with whom *Mr. William C. Scarritt* was on the brief, for appellant.

*Messrs. Ludwick Graves* and *Irvin Fane,* with whom *Mr. William Chamberlain* was on the brief, for appellee.

MR. JUSTICE BUTLER delivered the opinion of the Court.

The questions for decision are whether, as construed in this case by the highest court of Missouri, the statutes of that State regulating public utilities violate Art. I, § 10 of the Constitution of the United States, declaring that "No State shall . . . pass any . . . Law impairing the Obligation of Contracts . . .," or § 1 of the Fourteenth Amendment declaring "nor shall any State deprive any person of life, liberty, or property, without due process of law."

Appellee was plaintiff and appellant defendant below. They made a contract whereby the former for specified rates agreed to furnish the latter steam for heating its buildings in Kansas City for a term of five years ending

August 31, 1913, with option to defendant to extend the contract for an additional five years. March 17, 1913, the state public service commission law was enacted.[1] May 29, following, defendant exercised its option and so extended the term of the contract to August 31, 1918.

June 28, 1917, plaintiff in pursuance of the statute[2] filed with the commission a schedule of steam heating rates to become effective August 1, 1917; they were higher than those specified in the contract. The city and numerous users other than defendant objected; the commission, without attempting to apportion operating expenses and values between plaintiff's heating and electric service, found that the rates filed were unreasonably high and prescribed, as just and reasonable, rates lower than those filed but higher than the contract rates and made them effective March 1, 1918. 5 Mo. P. S. C. 664. Plaintiff filed a new schedule in accordance with the commission's order.

June 11, 1918, it complained that these rates were confiscatory. The commission, after apportioning operating expenses and values between the electrical and steam services, found the rates "inadequate, unjust and unreasonably low," that during none of the time was "heating revenue sufficient to even meet the fuel expense alone," and that "heretofore the steam heating business has been carried at a loss, and this loss has been borne either by the light and power consumers or by the company." Thereupon, it ordered new and higher rates effective December 1, 1919. 8 Mo. P. S. C. 223, 292, 296. The findings and order of the commission were approved by the supreme court in *State ex rel. Case* v. *Public Service Comm'n,* 298 Mo. 303; 249 S. W. 955.

For steam furnished defendant after August 1, 1917, plaintiff regularly sent bills based on the rates it had

[1] Missouri R. S., 1929, c. 33, §§ 5121 *et seq.*

[2] Missouri R. S., 1929, §§ 5190 (12), 5209.

filed with the commission. Claiming the contract rates still to be applicable, defendant paid amounts calculated in accordance with them. Plaintiff gave defendant credit for the payments it made. After expiration of the period covered by the contract as extended, plaintiff brought this suit. For steam furnished after August 1, 1917, and before March 1, 1918, it sought to recover on the basis of the charges specified in the first schedule filed. For steam furnished after March 1, 1918, to the end of the contract term, it sought to recover on the basis of charges of the schedule promulgated by the commission. The trial court held plaintiff not entitled to recover on its claim in respect of the first period but gave judgment in its favor in respect of the other one. Both parties appealed. The Missouri supreme court ruled the contract rates not applicable, held plaintiff entitled to recover on its claim in respect of both periods and directed that it have judgment for the sums calculated on the basis of the schedules filed with the commission.

Defendant's contention is not that the State lacked power by appropriate action to establish and enforce just and reasonable rates but that, as against the constitutional provisions invoked, the action taken under the public service commission law was not sufficient to abrogate the contract rates.

Specifically, its complaints are that the court construed the statute (1) to make (a) mere filing of plaintiff's schedule and (b) the later promulgation of a schedule by the commission effective to abrogate the contract rates and (2) to require that, although the contract was in due time fully performed and defendant prior to the commencement of the suit had paid plaintiff the contract rates, it was bound to pay additional amounts calculated on the basis of the higher rates specified in plaintiff's published schedules. It is upon these grounds that de-

fendant contends that the state law violates the quoted clauses of the Constitution.

These questions are to be decided upon the construction that the state supreme court put upon the statute. And that law is to be taken as if it declared that rates made in accordance with its provisions shall supersede all existing contract rates.[3] There is here involved no question as to the validity of the rates prior to the passage of the statute. Without expression of opinion, we assume that then the parties were bound by the contract. But the State has power to annul and supersede rates previously established by contract between utilities and their customers.[4] It has power to require service at nondiscriminatory rates, to prohibit service at rates too low to yield the cost rightly attributable to it,[5] and to require utilities to publish their rates and to adhere to them.[6] Under the challenged statute, defendant had opportunity to support the contract rates and to test before the commission and in the state supreme court—

[3] *Fulton* v. *Public Service Comm'n*, 275 Mo. 67; 204 S. W. 386; *Sedalia* v. *Public Service Comm'n*, 275 Mo. 201, 209; 204 S. W. 497; *Kansas City Bolt & Nut Co.* v. *Kansas City Light & Power Co.*, 275 Mo. 529; 204 S. W. 1074; affirmed 252 U. S. 571. *State ex rel. Washington University* v. *Public Service Comm'n*, 308 Mo. 328, 342; 272 S. W. 971; *State ex rel. Public Service Comm'n* v. *Latshaw*, 325 Mo. 909, 917–918; 30 S. W. (2d) 105; *State ex rel. Kirkwood* v. *Public Service Comm'n*, 330 Mo. 507, 521; 50 S. W. (2d) 114.

[4] *Union Dry Goods Co.* v. *Georgia Public Service Corp.*, 248 U. S. 372. *Producers Transportation Co.* v. *Railroad Commission*, 251 U. S. 228, 232. *Kansas City Bolt & Nut Co.* v. *Kansas City Light & Power Co.*, 252 U. S. 571. *Sutter Butte Canal Co.* v. *Railroad Commission*, 279 U. S. 125, 137–138.

[5] *Public Service Comm'n* v. *Utilities Co.*, 289 U. S. 130, 135–136. Cf. *Northern Pacific Ry. Co.* v. *North Dakota*, 236 U. S. 585, 604.

[6] *Armour Packing Co.* v. *United States*, 209 U. S. 56, 81. *Louisville & Nashville R. Co.* v. *Maxwell*, 237 U. S. 94, 97.

as others did—the validity of the filed schedule.[7] It failed to do so. And it here insists that the contracts could not be abrogated "without a proper hearing, finding and order of the commission with respect thereto." It does not, and reasonably it could not, contend that immediate exertion by the legislature of the State's power to prescribe and enforce reasonable and nondiscriminatory rates depends upon or is conditioned by specific adjudication in respect of existing contract rates.[8] It is clear that, as against those specified in the contract here involved, the rates first filed by plaintiff and those promulgated by the commission in accordance with the statute have the same force and effect as if directly prescribed by the legislature.[9]

Lacking in merit is defendant's contention that the statute violates the clauses of the Constitution invoked because held by the court to require that, although before this suit the service had been furnished and paid for in accordance with the contract, defendant was bound to pay more. As shown above, the rates specified in the schedules were held applicable from and after their respective effective dates. Defendant was not injured by plaintiff's failure to withhold service or more promptly to sue for the difference between its lawful charges and the amount paid. It cannot derive any advantage from refusal to pay.[10]

Plainly, enforcement of the rates in accordance with the statute did not violate either the contract clause of

---

[7] Missouri R. S., 1929, §§ 5191, 5232–5237. See *State ex rel. Washington University* v. *Public Service Comm'n*, 208 Mo. 328; 272 S. W. 971.

[8] *Louisville & Nashville R. Co.* v. *Mottley*, 219 U. S. 467.

[9] *Public Service Comm'n* v. *Pavilion Natural Gas Co.*, 232 N. Y. 146, 150–151; 133 N. E. 427; *North Hempstead* v. *Public Service Corp.*, 231 N. Y. 447, 450; 132 N. E. 144.

[10] *Louisville & Nashville R. Co.* v. *Central Iron Co.*, 265 U. S 59, 65.

the Constitution or the due process clause of the Fourteenth Amendment.

*Affirmed.*