DAYTON & MICHIGAN R. CO. v. COMMISSIONER OF INTERNAL REVENUE.

No. 4602.

Circuit Court of Appeals, Fourth Circuit.

June 10, 1940.

R. Kemp Slaughter, of Washington, D. C., for petitioner.

Lee A. Jackson, Sp. Asst. to the Atty. Gen. (Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key, Sp. Asst. to the Atty Gen., on the brief), for respondent.

Before PARKER, DOBIE and NORTH-COTT, Circuit Judges.

PARKER, Circuit Judge.

This is a petition to review a decision of the Board of Tax Appeals. The sole question involved. is whether payments of guaranteed dividends on preferred stock of petitioner are deductible as interest paid on indebtedness within the meaning of Sec. 23(b) of the Revenue Act of 1934, 48 Stat. 680, 26 U.S.C.A. Int.Rev.Code, § 23(b). These guaranteed dividends were paid by the Baltimore and Ohio Railroad Company, as assignee of the lessee of the properties of petitioner, direct to the stockholders. There is no question but that such payments constituted income to the petitioner, the question being whether, as they were made in discharge of an obligation of petitioner, petitioner was entitled to a deduction in the amount of the payments on the theory that they constituted in reality interest on an indebtedness and not dividends on stock.

The stock on which the dividends were paid was issued by petitioner under an act of the General Assembly of Ohio of April 16, 1870, 67 Ohio Laws, p. 89, and the payment of the dividends was secured by mortgage on petitioner's property, which lay wholly within the state of Ohio. The act has been interpreted and the rights of stockholders under the mortgage have been authoritatively declared by the Supreme Court of Ohio in Miller v. Ratterman, 47 Ohio St. 141, 24 N.E. 496, 500, a case brought to enjoin the levying of state taxes upon the stock, the issue there, as here, being whether the stock was true stock in the corporation or indebtedness upon which interest was to be paid. The court construed the mortgage in the light of the act and held: (1) that the guaranteed dividends were not to be paid in any event, but only out of surplus profits; (2) that the preferred stockholders were not given priority over general creditors by reason of the execution of the mortgage; and (3) that the certificates constituted stock in the corporation, and not indebtedness owing by it, and hence were not subject to taxation under the state law. Referring to the guaranty of dividends and the execution of the mortgage by the corporation securing same, the court said:

"Nor did the stipulation guarantying to the holders of the preferred stock payment of dividends thereon negative the idea that they were stockholders. It was not a stipulation to pay dividends in any event, but a stipulation to pay only out of surplus profits; for the company must be presumed to have proceeded in view of the terms of the second section of the act referred to, and the general rule of law on the subject. That rule is that payment of dividends to preferred stockholders differs from such payment to the holders of common stock only in that they are entitled to dividends in priority to any dividends upon the common stock. Dividends to either are to come from one common source, to-wit, from funds properly applicable to the payment of dividends; that is to say, net earnings. In the nature of things, this must be so. As well might one member of a partnership be permitted to appropriate to his own use assets of the firm to the prejudice of creditors as for a stockholder of a corporation to do it. A contract to permit this to be done would be contrary to public policy, and void. Pierce, R. R. 124, 125; St. John v. Railway Co., 22 Wall. 136 [22 L.Ed. 743]; Lockhart v. Van Alstyne, 31 Mich. 76 [18 Am.Rep. 156]; Taft v. Railroad

Co., 8 R.I. 310 [5 Am.Rep. 575]; Painsville & H. Railroad Co. v. King, 17 Ohio St. 534. And now provision to the same effect is made by statute. 1 Smith & B. Rev.St. 935.

"It may not be easy to satisfactorily determine what office the mortgage from the Dayton & Michigan Company to holders of the certificates to secure payment of dividends was expected to perform, inasmuch as those holders, if stockholders, could not thereby be given priority over creditors, either then existing, or those who became such afterwards. However, this consideration is hardly a sufficient reason for concluding that the giving of the mortgage implied a purpose to change the apparent status of the holders, though not entirely inconsistent with such purpose. If, in giving it, the intention was to treat the holders as creditors, we are at a loss to account for the absence of any provision fixing a definite time when the debt would mature, and the creditors have a right to enforce a return of the principal sum advanced; and, though the instrument, regarded as made to stockholders, was ineffectual to accomplish the most usual purpose of a mortgage, yet it does not follow that it was a vain thing, especially when considered in connection with the agreement against the execution of a further mortgage. The Dayton & Michigan Company's road having been leased, and being then in the possession of the lessee, and being operated by it, a contract of record might have been, in the view of the company, important, in order to clearly establish the rights of the new stockholders, and the obligation of the lessee company to them, and for the information of the public; and this might as well be done by mortgage as in any other way. It may be added that, so far from being inconsistent with the idea of an issue of stock, it is directly in line with it, inasmuch as preferred stock is itself a form of mortgage. 2 Redf.R.R. § 237."

The case is readily distinguishable from Helvering v. R., F. & P. R. Co., 4 Cir., 90 F.2d 971, 974. In that case, the guaranteed dividends were to be paid at all events, whether there were earnings out of which they might be paid or not, and the holders of preferred stock were given priority both as to accrued dividends and principal, not only over general creditors, but also over other secured creditors.

The criterion laid down by us in that case, under which the preferred stock there involved was held indebtedness of the corporation and not stock, leads to the conclusion that the stock here involved is stock and not indebtedness. We said: "The essential difference between a 'stockholder' and a 'creditor' is that the stockholder intends to embark upon the corporate adventure, taking the risks of loss attendant upon it that he may enjoy the chances of profit. The creditor, on the other hand, does not intend to take such risks so far as they may be avoided but merely to lend his capital to others who do intend to take them. Warren v. King, 108 U.S. 389, 399, 2 S.Ct. 789, 27 L.Ed. 769. While no comprehensive rule may be laid down for distinguishing in all cases between an investment in a corporation and a loan to it, one of the most important considerations is whether the right to share in the assets of the corporation in case of dissolution is subject to the rights of creditors. If subject to such right, there is a strong presumption that the interest in question is that of a stockholder. See Heller v. National Marine Bank, supra [89 Md. 602, 43 A. 800, 45 L.R.A. 438, 73 Am.St.Rep. 212]. If it is not subject to such right, or if, as here, it is preferred over the right, the status of a creditor rather than of a stockholder is indicated. This is recognized by Treasury Regulations 45, art. 812, which provides: 'Art. 812. Borrowed Capital: Securities.—Any interest in a corporation represented by bonds, debentures, or other securities, by whatever name called, including so-called preferred stock, if with respect to the payment of either interest or principal it ranks with or prior to the interest of the general creditors, is borrowed capital and cannot be included in computing invested capital. Any such preferred stock may, however, be so included if it is deferred with respect to the payment of both interest and principal to the interest of the general creditors.'"

■ Since the preferred stock here, under the controlling decision of the Supreme Court of Ohio, was deferred "with respect to the payment of both interest and principal to the interest of the general creditors", there can be no question but that it was properly treated as stock by the Board and that deduction of the amount paid as dividends was properly denied. See, also, Commissioner of In-

ternal Revenue v. Schmoll Fils Associated, 2 Cir., 110 F.2d 611; United States v. South Georgia Ry. Co., 5 Cir., 107 F.2d 3, 6. In the case last cited the controlling distinction between the authorities is well drawn by Judge Hutcheson as follows:

"The cases appellant and appellee cite are not in conflict. They all agree that the question for decision in each case is, not what the payments are called, but what in fact, they are, and that if taken as a whole, the evidence shows a relation of debtor and creditor, the payments made on account of that relation, will be interest, no matter how called, while if taken as a whole, the evidence shows a stockholding relation, the payments made will be dividends, equally no matter how called. We think it plain that the payments in this case were dividends under the rule set out and applied in all of the cases. We find no real conflict in the cases, no difficulty in attempting to apply them.

"The cases on which appellee most strongly relies are all cases where there was either a statutory lien securing payment, a fixed guarantee of payment or a fixed time to pay, plainly showing that the payments were to be of interest on a debt, payable at all events, rather than of dividends, payable out of earnings. * * *

"Cases on which appellant relies are those in which there being no fixed time to pay, and the facts as a whole showing merely an interest in the company, the payments whether called interest or dividends, are treated as dividend payments."

■ It is argued for the petitioner that the Supreme Court of Ohio did not correctly construe the act of 1870 or correctly determine the rights of preferred stockholders under the mortgage executed pursuant thereto. It was well settled, however, even before Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487, that decisions of the highest court of a state as to the interpretation to be placed upon one of its statutes were binding upon the federal courts. 14 A.J. 313; Lindsey v. Washington, 301 U.S. 397, 400, 57 S.Ct. 797, 81 L.Ed. 1182; Midland Realty Co. v. Kansas City Power & Light Co., 300 U.S. 109, 113, 57 S.Ct. 345, 81 L.Ed. 540. And it was equally well settled that we were bound by state decisions as to rights of property and other matters of local law. Tyler v. United States, 281 U.S. 497, 501,

50 S.Ct. 356, 74 L.Ed. 991, 69 A.L.R. 758; Warburton v. White, 176 U.S. 484, 496, 20 S.Ct. 404, 44 L.Ed. 555. Since the decision in Erie R. Co. v. Tompkins, supra, there can be no question whatever as to our duty to accept the decision of the Ohio court as determinative of the rights of the parties under contracts made, stock issued and mortgages executed within that state. It is true that in interpreting the meaning of a federal statute we are not bound by state decisions; but where rights under state laws become material to the application of federal statutes, we look to the decisions of the states where those rights arise to determine what they are. As said by this court in Leser v. Burnet, 4 Cir., 46 F.2d 756, 760: "While we look to the federal decisions, and in the absence of such decisions, to the general law, in interpreting the act of Congress, we look to the law of Maryland as laid down by its courts to determine the effect of conveyances executed within that state and relating to property there situate." See also Morgan v. Commissioner, 309 U.S. 78, 60 S.Ct. 424, 426, 84 L.Ed. ——; Lang v. Commissioner, 304 U.S. 264, 267, 58 S.Ct. 880, 82 L.Ed. 1331, 118 A.L.R. 319; Blair v. Commissioner, 300 U.S. 5, 9, 57 S.Ct. 330, 81 L.Ed. 465.

■ Petitioner further contends that its position is sustained by the Ohio decision of Burt v. Rattle, 31 Ohio St. 116. That decision, however, related to preferred stock issued under a different act of the legislature. Dividends were payable out of income whether they were earned or not; and there was a promise to repay the principal at a definite time. We see no conflict between this decision and that in Miller v. Ratterman, supra; but, if there were a conflict, the latter would be controlling, as it was rendered fourteen years later and must be taken as expressing the present state of the law.

While not controlling upon us, it is worthy of note that this preferred stock has uniformly been treated both by petitioner and by the revenue department of the government as a part of the capital stock of the corporation. It was reported by petitioner as capital in its capital stock returns for 1933, 1934 and 1935 and was at all times prior to 1935 carried on petitioner's books as a part of its capital. Under the decision of the Supreme Court of Ohio construing the statute under which it was issued and determining the rights

of holders under their certificates, we entertain no doubt as to the correctness of these reports and entries. The decision of the Board of Tax Appeals will accordingly be affirmed.

Affirmed.