Sohngen, J.
At the time complainant contracted with the telephone company and became a subscriber for its “measured service,” the original general exchange tariff, effective March 1, 1926, was in effect. It remained in effect until 1945, when the telephone company adopted and filed a revised tariff effective December 15, 1945, which was approved by the commission. In the instant proceeding, on application of the telephone company, the authority to adopt the revised tariff of December 15, 1945, was granted by the commission, so that this appeal presents for our consideration the question whether the order of the commission approving the new tariff provision in this case is unreasonable or unlawful.
The complainant claims that the service rendered it by the telephone company was not in violation of the tariff provisions on file with the commission and effective at the inception of the service, and that complainant’s tenants were true “joint users” within the meaning of such provisions.
Paragraph 4, Section 11, of the General Exchange Tariff, Original Sheet, Joint User Service, provided:
“The joint user must be located on the subscriber’s premises and in the same office or suite of offices as the subscriber, or in an office immediately adjacent to and connected therewith. *'* *”
Paragraph 12, Section 11, of the same General Exchange Tariff provided:
“Not more than four joint users are allowed in connection with individual or party line flat rate service or for each flat rate private branch exchange trunk line.”
Determination of complainant’s contention depends upon the meaning of the phrase, “located * * # in the same office or suite of offices * * * or in an office immediately adjacent to and connected therewith.”
The complainant does not contend that the joint user *257 was by users “in the same office or suite of offices,” but does contend that the joint user was by users “in an office immediately adjacent to and connected therewith,” citing for its authority definitions of the various words used in the phrase contained in such paragraph 4 of the tariff.
In construing the phrase in question, the words must be construed in the light of the purpose of the tariff. The tariff with respect to joint-user service showed that it was a special type of service furnished to provide for situations where a subscriber having more space than was needed for his own use rented part of that space to another person.
It is clear to the writer of this opinion that such joint-user service was never intended to be available for use as a telephone service for a general office building with one subscriber furnishing telephone service to all the tenants of such building, and, in the opinion of this court, the service rendered by the telephone company to complainant was in violation of the tariff provisions on file with the commission during the period of time under discussion in this case.
The complainant contends that even if such service did violate the tariff provisions on file with the commission, . the telephone company should not be permitted to discontinue complainant’s existing service because the telephone company has been rendering that service for more than 18 years and is estopped from such discontinuance. This contention is not supported by sound reason nor by the decisions in cases wherein the principle was urged. The Ohio Public Utilities Commission Act provides that the commission shall have power to regulate public utilities and shall have general supervision over the adequacy of service rendered by public utilities (Sections 614-3 and 614-12, General Code). The act provides that no public utility shall give any unreasonable *258 preference or advantage to any person or firm (Sections 614-14 and 614-15, General Code). Sound reasoning compels the conclusion that a public utility cannot be required to render a service in violation of its filed tariffs prescribed by the act.
In the case of Midland Realty Co. v. Kansas City Power & Light Co., 300 U. S., 109, 81 L. Ed., 540, 57 S. Ct., 345, it was held:
“But the state has power to annul and supersede rates previously established by contract between utilities and their customers. It has power to require service at nondiscriminatory rates, to prohibit service at rates too low to yield the, cost rightly attributable to it, and to require utilities to publish their rates and to adhere to them.”
Complainant contends also that a public utility once having established a service, the service cannot be discontinued unless and until some good and sufficient reason is shown therefor. Citing New York Central Rd. Co. v. Public Utilities Commission, 129 Ohio St., 381, 195 N. E., 566, and Hocking Valley Ry. Co. v. Public Utilities Commission, 92 Ohio St., 9, 110 N. E., 521, L. R. A. 1918A, 267, Ann. Cas. 1917B, 1154.
In our opinion, when the telephone company in the instant case properly determined that the service being furnished to complainant violated its tariff, the company had good and sufficient reason to discontinue such service and it was its duty to do so.
Does the service presently rendered to complainant and its tenants constitute discrimination in violation of Sections 614-13, 614-14 and 614-15, General Code?
Section 614-13 provides:
“Every public utility shall furnish and provide with respect to its business such instrumentalities and facilities as shall be adequate and in all respects just and reasonable. All charges made or demanded for any service rendered, or to be rendered, shall be just *259 and reasonable, and not more than allowed by law or by order of the commission. Every unjust or unreasonable charge made or demanded for any service, or in connection therewith, or in excess of that allowed by law or by order of the commission, is prohibited and declared to be unlawful.”
Section 614-14 provides:
“No public utility shall directly or indirectly, or by any special rate, rebate, drawback or other device or method, charge, demand, collect or receive from any person, firm, or corporation, a greater or less compensation for any services rendered, or to be rendered, except as provided in this act, than it charges, demands, collects, or receives from any other person, firm, or corporation for doing a like and contemporaneous service under the same, or substantially the same circumstances and conditions. Nor shall free service or service for less than actual cost be furnished for the purpose of destroying competition, and such free service and every such charge is prohibited and declared unlawful.”
Section 614-15 provides:
“No public utility shall make or give any undue or unreasonable preference or advantage to any person, firm, corporation, or locality, or subject the same to any undue or unreasonable prejudice or disadvantage in any respect whatsoever.”
If, under the telephone company’s general exchange tariff, the company is furnishing complainant and its tenants a service which it could not furnish to others under similar or the same circumstances, such service is discriminatory. In the instant case, since the telephone company by filing an amended tariff has clearly shown that it would not furnish the same service to others under similar or the same circumstances as the complainant, we must conclude that the service which complainant is receiving constitutes a discrimi *260 nation which is prohibited under Section 614-15, General Code.
It is our opinion in the instant case that the service rendered by the telephone company to complainant was in violation of the tariff provisions on file with the commission; that the telephone company’s knowledge of such violation does not estop the commission from ordering a discontinuance of such violation; and that the service which complainant is presently receiving from the telephone company is discriminatory and in violation of Section. 614-15, General Code.
The order of the commission being neither unreasonable nor unlawful, the same is affirmed.

Order affirmed.

Weygandt, C. J., Turner, Matthias, Hart, Zimmerman and Stewart, JJ., concur.