**CABOT CARBON CO. v. PHILLIPS PETROLEUM CO.**

No. 5686–Civil.

United States District Court, W. D. Oklahoma.

June 30, 1953.

---

2. See also United States v. Graham, D.C.N.Y.1952, 108 F.Supp. 794, 797.

Rainey, Flynn, Green & Anderson, Oklahoma City, Okl., for Cabot Carbon Co.

Cecil C. Hamilton, Oklahoma City, Okl., R. M. Williams and Harry D. Turner, Legal Department, Phillips Petroleum Co., Bartlesville, Okl., for Phillips Petroleum Co.

CHANDLER, District Judge.

The issue in this action is whether the contract price of four cents (4¢) per thousand cubic feet (MCF) agreed upon between Cabot Carbon Company, plaintiff, hereinafter referred to as Cabot, and Phillips Petroleum Company, defendant, hereinafter referred to as Phillips, as the price to be paid by Phillips to Cabot for natural gas at the wellhead prevails over higher prices later established by the Oklahoma Corporation Commission in orders promulgated subsequent to the date of the contract and as a means of regulating, as prescribed by the Oklahoma Statutes 1951, Title 52, Sections 231, 233, 239, and 243, economic as well as physical waste of natural gas.

Cabot owned oil and gas leases on certain lands and the gas rights on other lands in the Guymon-Hugoton gas field in Texas County, Oklahoma. On March 10, 1944, it entered into a written contract with Phillips whereby, for a substantial cash consideration or bonus, it agreed to assign the leases to Phillips and to grant to Phillips leases covering the lands in which Cabot owned the gas rights. Cabot specifically reserved in each instance, however, a part of the leasehold estate.

Paragraph 4 of the contract provided that Cabot *reserved* from the leasehold estates assigned and granted to Phillips (in addition to the one-eighth royalty provided in the leases *granted* to Phillips) "*an undivided interest in the natural gas underlying said lands or in any natural gas which may be produced therefrom which shall be free of development and operating costs and equal to one-fourth of seven-eighths of all the gas produced*" and that "*Phillips shall become the owner of the gas when produced and will account to Cabot for said one-fourth of seven-eighths of the gas produced at a value of four cents (4¢) per MCF*".

The assignments of leases that Cabot made to Phillips pursuant to the contract reserve to Cabot "*an undivided interest in the natural gas underlying the lands * * * and produced therefrom equal to one-fourth (¼) of seven-eighths (⅞) of all gas produced from said lands under the terms of*

*the oil and gas lease hereby assigned. Said reservation shall be free of development and operating costs*". The leases granted by Cabot to Phillips pursuant to the contract also contain this same reservation.

A provision of the contract called for renewal leases to be taken in the name of Cabot and re-assigned to Phillips on the same basis as the original assignments. Where Phillips mistakenly took renewal leases in its own name it executed an assignment to Cabot whereby it assigned to Cabot *"one-fourth of seven-eighths of all gas produced from the above described lands under the terms of the * * * leases"*.

Exchange assignments, consented to by Cabot as an accommodation to Phillips subsequent to the original contract provided Phillips *"does bargain, sell, assign, and deliver unto Cabot * * * an undivided interest in the natural gas underlying (description of property) and produced therefrom equal to one-fourth of seven-eighths of all gas produced from said land"*. Neither party was or is now the owner of the surface of any of the lands involved.

In accordance with the terms of the contract, Phillips has drilled and operated a number of gas wells on said leases and has produced free of cost to Cabot its reserved share of the gas, and has accounted to Cabot each month from the date of first production for the amounts payable under Paragraph 4 of the contract for Cabot's share of the gas reserved from the working interest.

In the meantime, on December 9, 1946, the Corporation Commission of Oklahoma entered its Order No. 19514 providing that from and after January 1, 1947, *"no natural gas shall be taken out of the producing structures or formations in the Guymon-Hugoton field in Texas County, Oklahoma, at a price, at the wellhead, of less than 7¢ per thousand cubic feet"*. On July 29, 1952, the Commission entered a further order, No. 26096, effective from and after August 1, 1952, increasing said price to 9.8262¢ per thousand cubic feet for gas *"produced from any well * * * if sold at the wellhead or on the lease or drilling unit from which produced"*.

Subsequent to entering Order No. 19514, the Commission entered Order No. 19515 which directed Cities Service Gas Company to take gas from Peerless Oil & Gas Company ratably with its taking from other wells in the field and to pay Peerless the minimum wellhead price set in Order No. 19514. Phillips, by reason of its interest as a producer and purchaser in the same field and because of the effect these orders would have on its operations in the field, moved the Commission to vacate or modify these orders. The motion was heard and denied in Order No. 19702. Cities Service Gas Company appealed to the Supreme Court of Oklahoma from Order No. 19514 and Order No. 19515, and Phillips also appealed from these orders and from Order No. 19702 denying its motion. These appeals were consolidated and the Oklahoma Supreme Court affirmed the orders of the Oklahoma Corporation Commission. Cities Service Gas Co. v. Peerless Oil & Gas Co., Okl.Sup., 220 P.2d 279. Cities Service Gas Company and Phillips took separate appeals to the Supreme Court of the United States and in both cases the Oklahoma Court was affirmed. Cities Service Gas Company v. Peerless Oil & Gas Company, 340 U.S. 179, 71 S.Ct. 215, 95 L.Ed. 190; Phillips Petroleum Company v. State of Oklahoma, Oklahoma Corporation Commission, 340 U.S. 190, 71 S.Ct. 221, 95 L.Ed. 204. In both cases the Supreme Court of the United States held that the orders of the Commission were valid and did not violate or conflict with the Due Process and Equal Protection Clauses of the Fourteenth Amendment or the Commerce Clause, art. 1, § 8, cl. 3, of the Federal Constitution.

■ The power of the Corporation Commission to fix the price for which natural gas may be sold at the wellhead in order that economic as well as physical waste may be prevented may no longer be disputed since the decisions of the Supreme Court of the United States in the Cities Service and Phillips cases referred to above. But Phillips questions the application of the Commission's orders to the situation presented in the case at bar.

In the Phillips case the Supreme Court, after quoting from the opinion of the Supreme Court of Oklahoma in disposing of Phillips' contentions, said, 340 U.S. 190, 71 S.Ct. 221, 222: "Phillips argues that it is not a purchaser but merely a producer; that unlike the situation in Cities Service, the order as applied to it lacks any connection with correlative rights, the interest of the public, monopolistic practices or discrimination. The distinction is without a difference; the connection between realized price and conservation applies to all production in the field, whether owners purchase from others or not, and whether they own pipe lines or not. In a field which constitutes a common reservoir of gas, the Commission must be able to regulate the operations of all producers or there is little point in regulating any."

█ It is apparent from the wording of the original contract and the leases and assignments executed in pursuance thereof that the parties intended that Cabot would retain title to its reserved undivided interest in the gas until it had been produced, and that Phillips was to acquire title and ownership only after production, when the gas could be measured and Cabot paid therefor. Cabot and Phillips were joint owners of the leasehold estate. Phillips contracted to produce the gas for both and when produced to purchase Cabot's share of the gas. It follows that Cabot was a joint producer and seller, and Phillips, the operator, was a joint producer and purchaser at the wellhead. The contract price is, therefore, superseded by the price fixing orders of the Corporation Commission. The overriding royalty interest of Cabot is as clearly subject to these orders as the usual one-eighth lessor royalty.

The Corporation Commission filed the mandate from the Oklahoma Court in its records on January 26, 1951. During the pendency of these appeals supersedeas was requested by appellants, was granted, and bonds given which suspended the operation of the Commission's orders.

█ Cabot filed ,this suit on November 28, 1952, for the difference to November 1, 1952, between what Phillips had paid and Cabot had received under the contract and the amount claimed by Cabot to be due under the Commission's orders. Plaintiff could not have maintained the action prior to January 26, 1951. When entered, the minimum price orders became a part of the contract. Being an action on a written contract, the five year limitation applies and the action is not barred.

█ Nor does receiving and retaining the amounts paid by Phillips at the stated contract price constitute an equitable estoppel. Consolidated Cut Stone Co. v. Seidenbach, 181 Okl. 578, 75 P.2d 442; Fite v. Van Antwerp, 201 Okl. 26, 28, 200 P.2d 439, 440; Antrim Lumber Co. v. Wagner, 175 Okl. 564, 54 P.2d 173; Midland Realty Co. v. Kansas City Power & Light Co., 300 U.S. 109, 57 S.Ct. 345, 81 L.Ed. 540; Pittsburgh, Cincinnati, Chicago & St. Louis Railway Co. v. Fink, 250 U.S. 577, 40 S.Ct. 27, 63 L.Ed. 1151.

Judgment is hereby entered for plaintiff against defendant in the amount of $387,-282.37 with interest thereon at six percent per annum from this date and such additional sums and interest as have accrued from November 1, 1952, to this date. Costs are assessed to defendant.