Argued and submitted October 27, 2009, affirmed September 29, 2010, petition for review denied February 3, 2011 (349 Or 602)

KLAMATH OFF-PROJECT WATER USERS, INC.;
Bar CL, Inc.; Carole D. Canevari; David M. Cowan;
Bruce Hawkins; Earl Martin Kerns; Donald Rajnus;
Robert J. Sanders; C. John Wells,
*Plaintiffs-Appellants,*

*v.*

PACIFICORP,
*Defendant-Respondent.*

Klamath County Circuit Court
0604877CV; A139104

240 P3d 94

Melinda J. Davison argued the cause for appellants. With her on the briefs were Jesse E. Cowell and Davison Van Cleve, P.C.

Bruce L. Campbell argued the cause for respondent. With him on the brief were Joshua M. F. Sasaki, P.C., and Miller Nash LLP.

Before Landau, Presiding Judge, and Schuman, Judge, and Ortega, Judge.

LANDAU, P. J.

**LANDAU, P. J.**

Half a century ago, plaintiffs entered into an agreement for the purchase of electric power from an electric utility, the predecessor to defendant PacifiCorp. The agreement included no expiration clause. Fifty years later, PacifiCorp sought from the Oregon Public Utility Commission (PUC) approval of an increase in the rate for power sold to plaintiffs. When the PUC granted the request, plaintiffs sued PacifiCorp for breach of contract, and breach of implied duty of good faith and fair dealing under the common law and the Uniform Commercial Code (UCC), *former* ORS 71.2030 (2007), *renumbered as* ORS 71.3040 (2009). Their theory was that the contract guaranteed the sale of electricity at the stated price in perpetuity. PacifiCorp moved to dismiss the complaint for failure to state ultimate facts sufficient to constitute a claim. ORCP 21 A(8). The trial court granted the motion on the ground that plaintiffs' claims are barred by issue preclusion, given the PUC's approval of the rate increase. We affirm, albeit on alternative grounds. We conclude that, on the facts as pleaded, plaintiffs' claims fail as a matter of law because nothing in the agreement even arguably forecloses PacifiCorp from seeking a rate increase.

## I. FACTS

When reviewing a court's decision to grant a motion to dismiss for failure to state a claim, "we consider only the facts alleged in the complaint[ ] * * *." *Emmert v. O'Brien*, 72 Or App 752, 754, 697 P2d 222 (1985). We consider those allegations to be true and give the plaintiff the benefit of all favorable inferences. *Granewich v. Harding*, 329 Or 47, 51, 985 P2d 788 (1999). On appeal, our task is to determine whether the complaint adequately states a claim against defendant. *Id.* at 50.

In this case, the allegations of the complaint reveal the following: California Oregon Power Company (Copco) operated Klamath Basin hydroelectric facilities under a 50-year license that the Federal Power Commission issued in 1954. On April 30, 1956, Copco entered into an agreement to sell electric power to the Klamath Basin Water Users Protective Association, Inc. (the association), an association

of individuals who reside in and around the Upper Klamath River Basin, but outside the boundaries of the Klamath Reclamation Project. The agreement is known as the "off-project agreement" or just "the agreement." That agreement specified, in part, that,

"[i]n consideration for an increased flow of water caused by the development of lands for agricultural purposes within the Upper Klamath River Basin * * * Copco agrees to provide power rates for agricultural pumping for all off-project users in the Upper Klamath River Basin, as follows:

"10 Horsepower motors or over * * * [0.75 cents] per KWH[.]"

The off-project agreement does not specify an expiration date. In fact, it says nothing one way or the other about its duration or about the authority of Copco to seek an increase in the rates for the power that it sold to the association. The PUC approved the off-project agreement on or about May 4, 1956. PacifiCorp acquired Copco in 1961.

After the parties executed the agreement, Copco constructed dam improvements and hydroelectric facilities on the Klamath River below Keno, Oregon, and operated the facilities under its 1954 Federal Power Commission license. Copco, and later PacifiCorp, sold electricity to the association at the rate specified in the off-project agreement for the next 50 years.

In 2004, PacifiCorp's 50-year Federal Power Commission license expired. It filed an application to renew that license with the Federal Energy Regulatory Commission, and that application is still pending.

Meanwhile, in November 2004, PacifiCorp filed a request with the PUC, asking the commission to terminate the off-project agreement and to authorize PacifiCorp to increase the tariff rate charged to plaintiffs. PacifiCorp filed testimony, exhibits, and revised tariffs in support of its request to terminate the off-project agreement and to begin providing electric service to plaintiffs under standard tariff rates. Shortly after the filing of PacifiCorp's request, plaintiff Klamath Off-Project Water Users, Inc. (KOPWU), was

formed and succeeded the association's interest in the off-project agreement.

The PUC ultimately held hearings on PacifiCorp's request for increased rates. After the hearing, the commission issued an order that established an increased rate of 0.991 cents per kwh, effective April 17, 2006 to April 16, 2007. Furthermore, the commission's order indicated that the rate would be revised upward each of the following seven years under the provisions of ORS 757.227. In November 2006, plaintiffs—KOPWU and several individual members—filed a complaint in Klamath County Circuit Court, alleging breach of contract and breach of the implied duty of good faith and fair dealing under the common law and the UCC, *former* ORS 71.2030. In brief, plaintiffs alleged that the off-project agreement was a valid and binding contract that, with no termination provision, was of perpetual duration; thus, PacifiCorp's request that the PUC modify or terminate the agreement and increase the electric rates breached it, and also breached PacifiCorp's common law and UCC duty of good faith and fair dealing. Plaintiffs sought damages of more than $86 million, which they calculated as the difference between the rates set in the off-project agreement, and the projected future rates they will be subjected to pursuant to the commission's order. Plaintiffs appended a copy of the off-project agreement to the complaint and incorporated it into the complaint by reference.

PacifiCorp moved to dismiss the complaint for failure to state a claim under ORCP 21 A(8). The company advanced five grounds for its dismissal motion.

First, PacifiCorp argued that issue preclusion barred plaintiffs' action because the prior PUC proceeding and order finally decided whether defendant could charge a rate higher than that contained in the off-project agreement. PacifiCorp explained that plaintiffs' complaint, in effect, seeks to relitigate the PUC's ruling on rates.

Second, PacifiCorp argued that granting plaintiffs the relief that they request would violate the filed rate doctrine, which holds that a utility service rate filed and approved by the commission is conclusively lawful unless and until the commission itself approves a different rate.

Third, and in a related vein, PacifiCorp maintained that plaintiffs' claims fall within the commission's exclusive jurisdiction over utility rate-making proceedings. The company argued that plaintiffs' claims necessarily involved rate-making because, if plaintiffs were to prevail, the practical effect would be to roll back the rate to the rate specified in the off-project agreement.

Fourth, PacifiCorp contended that plaintiffs' claims failed to state a claim for relief because: (1) the off-project agreement was an indefinite contract and, consequently, terminable at will as a matter of law; (2) under the common-law implied covenant of good faith and fair dealing claim, plaintiffs could not have had an objectively reasonable expectation that PacifiCorp would not seek to modify or terminate the rate in the off-project agreement; and (3) plaintiffs failed to allege that the company acted without good faith, which is required for a claim under *former* ORS 71.2030.

Finally, PacifiCorp argued that, because the PUC has primary jurisdiction over the claims at issue, the trial court should dismiss them. In support of the motion to dismiss, PacifiCorp attached the commission's order to the motion and asked the court to take judicial notice of the order.

The trial court granted the motion to dismiss. The court concluded that issue preclusion barred plaintiffs' action. In reaching its decision, the court looked beyond the face of the complaint and considered the commission's order. In doing so, the court concluded that, even though plaintiffs' complaint was styled as an action for breach of contract and breach of the implied covenant of good faith and fair dealing, the true basis of the complaint was the fact that the PUC had approved higher electric power rates. Accordingly, the court determined that, because the commission's order dealt with the rate increase, the issues raised in plaintiffs' complaint were identical to the issues decided by the commission. The court then summarily indicated that the remaining four elements of issue preclusion were present and concluded that plaintiffs could not relitigate the claims in the action brought before the court. The court issued a general judgment of dismissal for failure to state a claim, and plaintiffs appeal.

## II. ANALYSIS

On appeal, plaintiffs assign error to the trial court's ruling to grant PacifiCorp's motion to dismiss.[1] As an initial matter, plaintiffs contend that the court impermissibly relied on information beyond the face of the complaint—namely, the commission's order—when evaluating the motion to dismiss. Furthermore, plaintiffs complain that the court failed to assume the truth of all well-pleaded facts in the complaint and neglected to give them the benefit of all favorable inferences from those facts.

Plaintiffs argue that, even assuming that judicial notice of the commission's order was proper, issue preclusion does not apply to this case because, although the PUC has authority to set public utility service rates, it lacks the authority to grant relief for breach of contract or breach of the implied covenant of good faith and fair dealing. Moreover, they argue, the trial court erred in concluding that all the prerequisites for applying issue preclusion are present in this case.

PacifiCorp responds that the trial court properly took judicial notice of the commission's order and that consideration of the order in conjunction with plaintiffs' complaint establishes all of the elements of issue preclusion. In any event, the company argues, the court's decision may be affirmed on any of the other four grounds that it argued in support of its motion to dismiss.

As an initial matter, we note that the law is unsettled as to whether it is appropriate for a court to take judicial notice of a PUC order when evaluating a motion to dismiss for failure to state a claim under ORCP 21 A(8). *See BoardMaster Corp. v. Jackson County*, 224 Or App 533, 541 n 3, 198 P3d 454 (2008) (noting that "the propriety of referring to a tariff as the basis for a dismissal under ORCP 21 A(8) may be debatable"); *Adamson v. WorldCom*

---

[1] Plaintiffs identify three "assignments of error," each of which targets what they contend is a legally erroneous basis for the trial court's decision on defendant's motion to dismiss. Actually, assignments of error must be directed at rulings by the court, not at components of the court's reasoning or analysis that underlie its rulings. *See* ORAP 5.45(3). We address all of plaintiffs' arguments, but we treat their multiple assignments of error as one.

*Communications, Inc.*, 190 Or App 215, 221, 78 P3d 577 (2003), *rev den*, 336 Or 657 (2004) (stating that "the appropriateness of relying on a tariff that is not part of the complaint as a basis for a motion filed under ORCP 21 A(8) is at least debatable"); *cf. Utility Reform Project v. PUC*, 215 Or App 360, 364 n 1, 170 P3d 1074 (2007) (taking judicial notice of a commission order in the context of an appeal from a circuit court judgment reversing and remanding a commission order on judicial review). We need not resolve that issue in this case, however, because PacifiCorp is correct that, even if it was erroneous to rely on the order, and even if it were further error to conclude on the basis of that order that plaintiffs' claims are subject to issue preclusion, the trial court's decision to dismiss the complaint was correct for other reasons. Specifically, even assuming the truth of all allegations in the complaint, plaintiffs have failed to state a claim.

## A. *Breach of Contract Claim*

■ We begin with plaintiffs' breach of contract claim. Plaintiffs contend that PacifiCorp breached the off-project agreement by seeking the termination of the contract and PUC approval of higher rates than the contract provides. PacifiCorp responds that no breach occurred, because the contract, being one of indefinite nature, was terminable at will.

■ Under Oregon law, "perpetual agreements are disfavored[.]" *Coun. Jewish Wom. v. Srs. of Charity*, 266 Or 448, 456, 513 P2d 1183 (1973). But, where "clearly provided for" in the language of the agreement, they will be enforced according to their terms. *Id.* The question is whether a given contract has "clearly provided" for its perpetual duration.

In *Andersen v. Waco Scaffold & Equip.*, 259 Or 100, 485 P2d 1091 (1971), the Supreme Court addressed the question in a case in which the parties entered into an equipment rental contract for a three-year term, renewable upon mutual agreement. When the three-year term expired, the parties did not agree to renew it; they simply continued on the same terms. Several months later, a dispute arose about the enforceability of the agreement. One party contended that

the contract remained in effect because both parties had continued to abide by its terms even after its expiration. The Supreme Court rejected the argument, explaining that

> "th[at] fact does not of itself establish a renewal of the contract. The contract itself provided for renewal only by mutual agreement; there is no evidence that the parties ever agreed to extend their contract for another non-cancelable period. At most, the evidence indicates an informal continuation under the terms of the contract; *since no new agreement with a specific duration was reached, the relationship between the parties was terminable at the will of either.*"

*Id.* at 105 (citations omitted; emphasis added).

In *Lund v. Arbonne International, Inc.*, 132 Or App 87, 887 P2d 817 (1994), we had occasion to apply *Andersen* in a dispute concerning a consulting contract between a beauty and skin care company and its registered consultant. The contract said nothing about a particular term. When a dispute arose between the company and its consultant, the company "deregistered" the consultant, who promptly sued for, among other things, breach of contract. The trial court dismissed the claim on summary judgment, and we affirmed. Notwithstanding the consultant's contentions that there were issues of fact about whether the parties intended the agreement to be terminable at will, we concluded the claim could not be maintained as a matter of law. Citing *Andersen*, we explained:

> "[T]he rule in Oregon is that a contract for an indefinite period may be terminated at will when reasonable notice is given. Here, the only agreement * * * does not set out a definite period for the relationship. We conclude that the agreement established an 'at will' relationship."

*Lund*, 132 Or App at 90-91 (citations and footnote omitted).

The issue arose again in *Paul Gabrilis, Inc. v. Dahl*, 154 Or App 388, 394, 961 P2d 865, *rev den*, 327 Or 553 (1998), a case in which a country club unilaterally terminated several memberships. The country club argued that, because the membership agreement said nothing about its duration, membership was terminable at will. We rejected the argument. We explained that, "[i]f there is nothing in the nature

or language of a contract to indicate that the contract is perpetual, courts will interpret the contract to be terminable at will * * *." *Id.* at 394. The important consideration, we explained, is the wording of the contract. Citing *Coun. Jewish Wom.*, we added that, "where provided for, perpetual agreements will be enforced according to their terms." *Paul Gabrilis, Inc.*, 154 Or App at 394. We concluded that several provisions of the membership agreement—in particular, the transferability of memberships and provisions suggesting that memberships could be terminated only for cause—were inconsistent with the notion that the memberships were terminable at will. *Id.* at 395.

In this case, the off-project agreement is silent as to duration. Moreover, unlike the agreements in *Coun. Jewish Wom.* and *Paul Gabrilis, Inc.*, there is no wording in the off-project agreement that, when reasonably construed, is capable of even suggesting that the agreement was not terminable at will. Nor is there anything about the nature of the agreement that suggests that it was not intended to be terminable at will. Certainly plaintiffs have failed to cite a single provision or anything else related to the nature of the agreement that suggests that, as long as plaintiffs continued to supply consideration, the contract was intended to continue in perpetuity.[2]

To the contrary, the nature of the agreement—that is, an agreement concerning the provision of services subject to the general regulatory authority of the PUC—suggests quite the contrary. The commission is charged with protecting utility customers and the public generally "from unjust and unreasonable exactions and practices and to obtain for them adequate service at fair and reasonable rates." ORS 756.040(1). In doing so, the commission has the "broadest authority" in the area of ratemaking. *American Can Co. v. Davis*, 28 Or App 207, 221, 559 P2d 898, *rev den*, 278 Or 393 (1977). And the exercise of its regulatory function has been characterized as " 'commensurate with that of the legislature

---

[2] Plaintiffs' only response to this particular argument is to suggest that the law about the duration of agreements specifying no particular term is "uncertain" and should not be settled in this case.

itself[.]' " *Id.* (quoting *Pacific N. W. Bell v. Sabin*, 21 Or App 200, 214, 534 P2d 984, *rev den* (1975)).

■ ■ Of particular importance is that the commission is authorized to " 'annul and supersede rates previously established by contract between utilities and their customers.' " *Id.* at 222 (quoting *Midland Realty Co. v. Kansas City Power & Light Co.*, 300 US 109, 113, 57 S Ct 345, 81 L Ed 540 (1937)). And it has long been settled law that private contracts with utilities are regarded as entered into subject to the reserved authority of the state to modify the contract in the public interest. *Union Dry Goods Co. v. Georgia Pub. Serv. Corp.*, 248 US 372, 375-76, 39 S Ct 117, 63 L Ed 309 (1919). Without such power, the

> "whole public interest in utility regulation would become meaningless, since by making separate contracts with all or any of its individual customers, the utility and the customer could effectively bypass all or any relevant part of the public utility regulatory statutes and the regulations governing the public utility."

*American Can Co.*, 28 Or App at 223.

Thus, plaintiffs' contention that the off-project agreement precludes PacifiCorp from applying to the PUC for termination of the agreement and revisions of the utility service rates cannot be reconciled with the foregoing basic principles that form the regulatory backdrop against which the parties entered into it. The trial court did not err in dismissing plaintiffs' breach of contract claim as the off-project agreement was, as a matter of law, terminable at will.

B. *Claims for Breach of Implied Duty of Good Faith*

■ We turn, then, to plaintiffs' claims for breach of the implied duty of good faith and fair dealing. As we have noted, plaintiffs assert claims under both the common law and the UCC. Whether the UCC applies to a contract for the sale of electricity has not been addressed in Oregon, and the question lacks consensus across the country. *Compare U. S. v. Consolidated Edison Co. of N. Y.*, 590 F Supp 266, 269 (SDNY 1984) (finding that "electricity is not considered 'goods' " and the UCC is not applicable to contracts involving the sale of electricity), *with In re Pacific Gas and Elec. Co.*, 271 BR 626,

639 (ND Cal 2002) (concluding that electricity is a good for the purposes of the UCC). We need not address that issue in this case, however; even assuming for the sake of argument that electricity is a good within the meaning of the UCC, plaintiffs' claims fail as a matter of law under both the common law and the UCC.

 In general, every contract has an obligation of good faith in its performance and enforcement under the common law. *Elliott v. Tektronix, Inc.*, 102 Or App 388, 396, 796 P2d 361, *rev den*, 311 Or 13 (1990). "[A] party may violate its duty of good faith and fair dealing without also breaching the express provisions of a contract." *Id.* In addition, a claim for breach of the duty of good faith and fair dealing "may be pursued independently of a claim for breach of the express terms of the contract." *McKenzie v. Pacific Health & Life Ins. Co.*, 118 Or App 377, 381, 847 P2d 879 (1993), *rev dismissed*, 318 Or 476 (1994). The purpose of that duty is to prohibit improper behavior in the performance and enforcement of contracts, and to ensure that the parties "will refrain from any act that would 'have the effect of destroying or injuring the right of the other party to receive the fruits of the contract.' " *Iron Horse Engineering v. Northwest Rubber*, 193 Or App 402, 421, 89 P3d 1249 (2004) (quoting *Perkins v. Standard Oil Co.*, 235 Or 7, 16, 383 P2d 107 (1963)). Yet, the duty "cannot contradict an express contractual term, nor otherwise provide a remedy for an unpleasantly motivated act that is expressly permitted by the contract." *Zygar v. Johnson*, 169 Or App 638, 645, 10 P3d 326 (2000), *rev den*, 331 Or 584 (2001).

██ ██ The duty "does not operate in a vacuum[,]" rather it "focuses on the 'agreed common purpose' and the 'justified expectations' of the parties, both of which are intimately related to the parties' manifestation of their purposes and expectations in the express provisions of the contract." *OUS v. OPEU*, 185 Or App 506, 515-16, 60 P3d 567 (2002). The common-law implied duty of good faith and fair dealing serves to effectuate the objectively reasonable expectations of the parties.

In light of the foregoing principles, then, the dispositive question in this case is whether it is appropriate to

imply a duty for PacifiCorp to refrain from requesting an increase in the rate, in order to effectuate the parties' objectively reasonable expectations regarding the off-project agreement.

We agree with PacifiCorp that plaintiffs could not have had an objectively reasonable expectation that the company would never seek to modify or terminate the rate in the off-project agreement. As we have already noted, there is a complete absence of wording in the agreement suggesting that the terms of the agreement are perpetual; to the contrary, the agreement was terminable at will. Given that, we do not understand how plaintiffs could possess an objectively reasonable expectation that PacifiCorp would never seek to modify the rates. The absence of an objectively reasonable expectation in the perpetual operation of the agreement is especially clear in the light of the fact that it was entered into subject to the reserved authority of the state to modify the rates in the contract in the public interest. There can be no justified expectation by plaintiffs that, in the absence of express contract provisions to the contrary, PacifiCorp would not ask the commission to exercise its jurisdiction to set just and reasonable rates. Accordingly, it would be inappropriate to imply a duty on the part of PacifiCorp to never seek a change in rates. The trial court did not err in dismissing plaintiffs' common-law claim for breach of an implied covenant of good faith and fair dealing.

The same reasoning applies to plaintiffs' UCC claim. The duty of good faith contained in the UCC, as adopted by the Oregon legislature, contains both a subjective component of "honesty in fact" and an objective component regarding the reasonable expectations of the parties that mirrors the common law. *Aylett v. Universal Frozen Foods Co.*, 124 Or App 146, 150, 861 P2d 375 (1993). Because there is no objectively reasonable expectation that PacifiCorp would never seek to modify or terminate the rate in the off-project agreement, we cannot imply such a duty on the company. As such, plaintiffs' UCC claim fails as a matter of law.

Affirmed.