Argued and submitted June 23, affirmed October 15, 1997

LOW-INCOME CONSUMERS UNION,
*Appellant,*

*v.*

OREGON PUBLIC UTILITY COMMISSION,
*Respondent,*

*and*

PORTLAND GENERAL ELECTRIC COMPANY,
*Intervenor-Respondent.*

(94-12-08220; CA A94223)

946 P2d 1164

Linda K. Williams argued the cause and filed the briefs for appellant.

Jas. Adams, Assistant Attorney General, argued the cause for respondent Oregon Public Utility Commission. With him on the brief were Hardy Myers, Attorney General, and Virginia L. Linder, Solicitor General.

Barbee B. Lyon argued the cause for intervenor-respondent Portland General Electric Company. With him on the brief was Tonkon, Torp, Galen, Marmaduke & Booth.

Before Riggs, Presiding Judge, and Leeson, Judge, and Richardson, Senior Judge.*

RIGGS, P. J.

---

* Richardson, S. J., *vice* Landau, J.

**RIGGS, P. J.**

Pursuant to ORS 756.580, Low-Income Consumers Union (LICU) challenged an order of the Oregon Public Utilities Commission (PUC), Order No. 94-1472, which dismissed a complaint filed by LICU directed at tariffs of Portland General Electric Company (PGE) imposing late payment fees on its customers' bills. PGE intervened in the proceeding. The trial court affirmed the order. LICU appeals.

In May 1988, PGE filed two tariffs with PUC that would impose a 1½ percent late payment charge on past due bills. PUC approved the tariffs at a public meeting, and they took effect in July 1988. LICU did not participate in that proceeding. In April 1989, LICU filed a complaint with PUC challenging the legality of the charge; it was docketed as UC 141. It asked for rulings that PUC lacked authority to allow the charge, that PUC take into account PGE's revenues from the charge, that the charge was collected illegally and that the charge constituted a general rate increase imposed without compliance with PUC's rate increase rule.

In October 1989, a PUC hearings officer stayed UC 141, because PUC had commenced an administrative rulemaking proceeding, AR 193, to determine the agency's authority to allow public utilities to impose late payment charges. In December 1989, LICU applied to PUC for deferred accounting by PGE for its revenue from the charges under the 1988 tariffs so that, should the fees later be held unlawful, they could be refunded. In November 1990, PUC issued its order in AR 193, concluding that it has the authority to allow the assessment of late payment charges. PUC also promulgated OAR 860-21-126, which generally allows the charges.

In May 1991, PUC issued an order refusing to order deferred accounting because it had already taken PGE's late payment charges revenue into account in approving new tariffs in 1991 that superseded those in effect when the 1988 tariff filings were approved. In August 1992, PUC ruled that late payment charges are not a "general rate revision" requiring the full panoply of procedures that such a revision would require.

In October 1994, PUC issued an order dismissing LICU's UC 141 on the ground that all issues raised therein had been decided in the other proceedings and again denied the request for deferred accounting for essentially the same reason. LICU then began this proceeding.

■■    Although this is an appeal from a circuit court judgment, we review PUC orders "directly." ORS 756.598; *Pacific Northwest Bell Telephone Co. v. Katz*, 121 Or App 48, 51, 853 P2d 1346, *rev den* 318 Or 25 (1993); *Pacific Northwest Bell Telephone Co. v. Katz*, 116 Or App 302, 305, 841 P2d 652 (1992), *rev den* 316 Or 528 (1993). In this instance that means that, even though LICU makes assignments of error directed at actions of the trial court in its disposition of the complaint consistent with ORAP 5.45, we must uphold the PUC order if there is a rational relationship between the facts that it found and the legal conclusions that it reached. The parties agree that there are no factual disputes. The heart of the order is the trial court's acceptance of the assertion by PUC and PGE that all of the allegations of the complaint had already been ruled on "in various ways," leaving no basis for additional PUC action.

We agree with PUC that there are two basic questions presented: Was PUC authorized to approve the 1988 tariffs that included late payment fees on overdue bills? Did LICU receive the procedural rights to which it was entitled? We conclude that the answer to both questions is yes, and we affirm.[1] In doing so, we generally adopt the reasoning in PUC's brief, as supplemented by intervenor's brief, but we will discuss only the issues that LICU raises that have at least some arguable merit.

■    LICU first asserts that PUC is limited to imposing charges that relate to the actual cost of utility service and that a late payment fee has nothing to do with the cost of service. Even assuming that PUC is so limited in its authority, a proposition for which we find no support in the statute or administrative rules, the argument ignores the economic

---

[1] In its original opinion, the trial court cited ORS 756.594 as stating the burden of proof in the proceeding. In a letter response to LICU's objection, the court corrected itself to cite ORS 756.598. Given the scope of our review, the mistake is of no significance.

facts. In its tariff submission, PGE demonstrated the effects of late payments on its financial situation, and PUC staff agreed, concluding that "it is a fair business practice to place the burden of collection costs on those customers responsible for them." We also agree. Moreover, we reject LICU's idea that, because no exact equivalence between the late payment charge and the economic cost to PGE in receiving payments late has been shown, imposition of the fee is unlawful. What the statute requires is that utility charges must be "just and reasonable." ORS 757.020; *see Publishers Paper Co. v. Davis*, 28 Or App 189, 199, 559 P2d 891(1977). PGE's filing made the necessary showing of justness and reasonableness.

■ LICU's argument that PUC was not authorized to allow late payment fees other than those permitted under OAR 860-21-240 is without merit. OAR 860-21-240 deals with the cost of serving disconnection notices and is entitled "Late Payment Fee." That is not what this dispute concerns. The rule's misnomer title means nothing here. LICU points to nothing that would require inclusion of the fee involved in this case in an administrative rule.

■ LICU next argues that the tariffs are illegal because PUC did not afford its customers adequate notice and opportunity to be heard, as required by OAR 860-22-017(1), (2).[2] The tariffs were not a "general rate revision" under the rule, because they did not raise the price of service for all or most

---

[2] OAR 860-22-017 provides, in part:

"(1) Within 15 days of filing with the Commission new or revised tariff schedules which constitute a general rate revision, a public utility shall inform its customers of the filing. A 'general rate revision' is a filing by a utility which affects all or most of a utility's rate schedules. 'General rate revision' does not include changes in an automatic adjustment clause under ORS 757.210(1), changes in the credit reflected on certain electric utility rate schedules relating to Section 5(c) of the Pacific Northwest Electric Power Planning and Conservation Act of 1980 or similar changes in one rate schedule, such as for an amortization, that affects other rate schedules.

"(2) The public utility shall inform its customers by:

"(a) Insertion of a display announcement, not less than a three column standard advertising unit (SAU) by ten inch advertisement, at least once in a newspaper of general circulation in the communities served by the utility;

"(b) An announcement inserted in the utility's regular billing to its customers; or

"(c) An announcement mailed to each customer."

customers but only for those who do not pay timely. The tariffs were a change in two schedules and are not within the contemplation of the rule by its terms. Moreover, and more simply, the fee is not a revision in PGE rates for electrical service.

■■ As part of the same argument, LICU posits that ORS 757.210(1)[3] is "meaningless" unless we read into it a requirement that notice be given to all customers who might be affected by a PUC action on a tariff. Plainly, the statute does not require "reasonable notice" unless PUC has decided to hold a hearing, either after receiving a complaint or on its own initiative. We are not entitled to rewrite the statute. ORS 174.010. We note that, under OAR 860-11-001(2), LICU would have received notice of the proceeding had it requested being placed on the "notice list." It could then have appeared in the public meeting to protest, filed a "written complaint" and forced a hearing. ORS 757.210(1), *see* n 3 above. It missed that opportunity. PUC did not exercise its discretionary power under ORS 757.210 to suspend the tariffs or under ORS 756.515 to conduct an investigation of PGE's earnings. The tariffs were approved lawfully.

■ On appeal, LICU attempts to raise an issue under ORS 756.568 that it never raised before PUC. The effort comes too late. *See Mignot v. Dept. of Revenue*, 300 Or 348, 351, 710 P2d 144 (1985).

---

[3] ORS 757.210(1) provides:

"Whenever any public utility files with the Public Utility Commission any rate or schedule of rates stating or establishing a new rate or schedule of rates or increasing an existing rate or schedule of rates, the commission may, either upon written complaint or upon the commission's own initiative, after reasonable notice, conduct a hearing to determine the propriety and reasonableness of such rate or schedule. The commission shall conduct such a hearing upon written complaint filed by the utility, its customer or customers, or any other proper party within 60 days of the utility's filing; provided that no hearing need be held if the particular rate change is the result of an automatic adjustment clause. At such hearing the utility shall bear the burden of showing that the rate or schedule of rates proposed to be established or increased or changed is just and reasonable. The term 'automatic adjustment clause' means a provision of a rate schedule which provides for rate increases or decreases or both, without prior hearing, reflecting increases or decreases or both in costs incurred or revenues earned by a utility and which is subject to review by the commission at least once every two years."

PUC determined that the purported issue of whether PGE was charging too much under its 1988 tariffs was rendered moot by its approval of tariffs to take effect in February 1991, because that approval took into account *all* of the utility's revenue, including late payment fees, during the previous tariffs' effective dates. LICU complains that it had been told to litigate the lawfulness of the fees in UC 141 but that PUC "plainly erred in dismissing UC 141 as moot on precisely the issues which had been reserved to that docket." What was reserved was LICU's deferred accounting request, and PUC properly concluded that it had mooted that request by its Order 94-1472 and by its approval of the new tariffs before it decided this case. Although the parties discuss at some length the purpose and function of deferred accounting, we see no benefit to anyone in our discussing it.

We conclude that PUC's order discloses a rational relationship between the undisputed facts and its legal conclusions. We therefore affirm the order and the trial court's judgment.

Affirmed.