Argued and submitted March 29, affirmed December 13, 2000

## UTILITY REFORM PROJECT,
Lloyd K. Marbet and Laurence Tuttle,
*Appellants,*

*v.*

## OREGON PUBLIC UTILITY COMMISSION,
*Respondent,*

*and*

## ENRON CORPORATION
and Portland General Electric Company,
*Intervenors-Respondents.*

(97C-14205; CA A103670)

16 P3d 516

350

Daniel W. Meek filed the brief for appellants.

Judy C. Lucas, Assistant Attorney General, argued the cause for respondent Oregon Public Utility Commission. With her on the brief were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

Barbee B. Lyon argued the cause for intervenors-respondents Enron Corporation and Portland General Electric Company. With him on the brief was Tonkon Torp LLP.

Before Landau, Presiding Judge, and Linder and Brewer, Judges.

LANDAU, P. J.

## LANDAU, P. J.

Plaintiffs appeal a judgment of the trial court upholding an Oregon Public Utility Commission (Commission) order approving the acquisition of a public utility. Plaintiffs' principal contention on appeal is that the Commission approved the acquisition without first holding certain hearings that plaintiffs contend are required by statute. We affirm.

We take the following undisputed facts from the Commission's order. Portland General Corporation (PGC) owns 100 percent of the stock of Portland General Electric Company (PGE), an Oregon public utility. Enron Corporation (Enron) is an energy company headquartered in Houston, Texas. In 1996, Enron proposed to merge with PGC and thereby acquire all of the stock in PGE.

As required by law, Enron and PGC applied to the Commission for approval of the merger. The Commission commenced a proceeding to evaluate and investigate the merger proposal and to receive comments on it from interested parties. Plaintiffs Utility Reform Project and Lloyd K. Marbet were permitted to intervene in the investigation proceeding.[1] Also participating in the proceeding was the Commission staff.

The Commission staff issued a report recommending that the merger application be denied on the ground that Enron had failed to agree to an appropriate level of compensation and benefits for PGE's customers. Enron and PGC then filed a revised proposal in an attempt to satisfy the staff's concerns. Settlement discussions followed. In the end, the staff, Enron, and PGC reached an agreement, resulting in a stipulation resolving all of the staff's concerns. Pertinent to this appeal is one of the components of the stipulation, namely, "Condition 20A," which required Enron to provide $105 million to PGE's customers for the value of PGE's goodwill, as well as

---

[1] Laurence Tuttle is also listed as a plaintiff, but we find no record of Tuttle having been permitted to participate as a party to the proceeding before the Commission.

"wholesale and non-franchise retail activities that PGE has undertaken that will not take place within PGE after the merger (this includes but is not limited to PGE's discontinued term wholesale trading and risk management activities), and wholesale and non-franchise retail activities that PGE might have undertaken had the merger with Enron not occurred[.]"

The stipulation also provided that the $105 million would constitute

"full payment to PGE's customers for any entitlement to the revenues, value or other benefits arising from the business activities of the merged entity, other than the regulated business activities conducted by PGE."

Plaintiffs opposed the stipulation and said so in comments filed with the Commission. They argued that the Commission should proceed no further without conducting a contested case proceeding. The Commission concluded that no purpose would be served by further proceedings and issued a final order approving the merger application. Plaintiffs moved for reconsideration, and the Commission denied the motion. Plaintiffs appealed the order to the Marion County Circuit Court, and the court affirmed the Commission's order.

On appeal, plaintiffs argue that the Commission erred in approving the merger application without first conducting a "rate case" proceeding. At least that is what we understand plaintiffs' argument to be. The matter is not entirely free from doubt, given their failure properly to set out an assignment of error as required in ORAP 5.45. At portions of the brief, plaintiffs complain about the failure of the Commission to conduct a "contested case," as provided in ORS 183.310(2)(a). Elsewhere, they complain about the failure of the Commission to conduct a "rate case," as provided in ORS 757.210(1). The problem is that a "contested case" and a "rate case" are not necessarily the same thing. Moreover, most of the contested case provisions of the Administrative Procedures Act do not even apply to the Commission. ORS 183.315(6). We therefore focus on the contention that the Commission erred in failing to conduct a rate case proceeding.

■ ■    In addressing plaintiffs' assignment of error, we review the Commission's order itself, not the circuit court's judgment. *Low-Income Consumers Union v. PUC*, 150 Or App 491, 494, 946 P2d 1164 (1997), *rev den* 327 Or 83 (1998). We review the Commission's findings for substantial evidence in the record as a whole. ORS 756.598(1). We review its interpretation of applicable statutes in accordance with the principles of *Springfield Education Assn. v. School Dist.*, 290 Or 217, 621 P2d 547 (1980). That is, unless the statutory terms at issue are delegative in nature, we review for errors of law. *Linn-Benton-Lincoln Ed. v. Linn-Benton-Lincoln ESD*, 163 Or App 558, 563, 989 P2d 25 (1999).

■    In this case, the parties' arguments concern the proper construction of statutes, the relevant terms of which are inexact in nature. We therefore examine those statutes in the usual manner, looking first to the text in context and, if necessary, to legislative history and other aids to construction. *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-12, 859 P2d 1143 (1993).

Enron and PGC submitted their merger application to the Commission pursuant to ORS 757.511(1), which provides that no person may "acquire the power to exercise any substantial influence over the policies and actions of a public utility" without first obtaining approval of the acquisition from the Commission. ORS 757.511(3) then provides that the Commission

> "shall examine and investigate each application received pursuant to this section and shall issue an order disposing of the application within 19 business days of its receipt. If the commission determines that approval of the application will serve the public utility's customers in the public interest, the commission shall issue an order granting the application. The commission may condition an order authorizing the acquisition upon the applicant's satisfactory performance or adherence to specific requirements. The commission otherwise shall issue an order denying the application. The applicant shall bear the burden of showing that granting the application is in the public interest."

The statute is one of several that require utilities to obtain Commission approval before engaging in specified acts. ORS 757.480, for example, requires Commission approval before a

public utility disposes of, mortgages, or otherwise encumbers property valued in excess of $100,000. ORS 757.485 likewise requires Commission approval before a public utility acquires stock in another utility valued in excess of $10,000. ORS 757.490 similarly requires Commission approval before a public utility may enter into a contract with another corporation concerning the construction, operation, maintenance, or use of public utility property. None of those statutes requires the Commission to conduct any particular form of hearing. None says anything about rate case proceedings.

ORS 757.210(1) does speak of rate case proceedings. It states:

> "Whenever any public utility files with the Public Utility Commission any rate or schedule of rates stating or establishing a new rate or schedule of rates or increasing an existing rate or schedule of rates, the commission may, either upon written complaint or upon the commission's own initiative, after reasonable notice, conduct a hearing to determine the propriety and reasonableness of such rate or schedule. * * * At such hearing the utility shall bear the burden of showing that the rate or schedule of rates proposed to be established or increased or changed is just and reasonable."

The Commission has adopted administrative rules setting forth the procedures for conducting such hearings. *See generally* OAR 860-014-0005 *et seq*. Among other things, the rules provide for discovery, including deadlines for responding to information requests—to which responses are due within 10 days, OAR 860-014-0070(1)—and notices of deposition—to which responses are due within 10-15 days, depending on whether the depositions are to be taken within the state, OAR 860-014-0065(2).

■ As we have noted, ORS 757.511(3) does not require the Commission to conduct any particular form of hearing, and, indeed, plaintiffs do not contend that that statute, of its own force, compels the Commission to conduct a rate case proceeding in this or any other case. Plaintiffs instead argue that the submission of Condition 20A had the effect of transforming the merger application into a rate case proceeding that is subject to the hearing requirements of ORS 757.210(1)

and the implementing rules that the Commission has adopted thereunder. According to plaintiffs, Condition 20A affects the extent to which PGE revenues from future whole-sale power sales may be taken into account in setting future electricity rates. Therefore, they argue, Enron's and PGC's application must be considered a filing for a change of rates within the meaning of ORS 757.210(1).

■ Even assuming that plaintiffs correctly characterize the effect of Condition 20A, no rate case proceeding is required by ORS 757.210(1). That statute applies "[w]henever any public utility files with the Public Utility Commission any rate or schedule of rates stating or estab-lishing a new rate or schedule of rates." Nothing in the merger application proposes to establish a new rate or sched-ule of rates for electric power provided by PGE. It may or may not be the case that the $105 million sum required by Condi-tion 20A ultimately will have an effect on rates. But ORS 757.210(1) does not apply to decisions or actions that merely may have an effect on rates at some undefined time in the future. It applies only when a utility files a rate or schedule of rates stating or establishing a new rate or schedule of rates. Plaintiffs' arguments cannot be reconciled with the language of the statute.

Plaintiff's arguments likewise cannot be reconciled with the context of ORS 757.511. As we have noted, that stat-ute is merely one of a number of provisions requiring Com-mission approval before a utility takes a specified action. Many, if not most, of those actions would have some effect on rates. Yet none requires a rate case proceeding; indeed, none requires any particular form of hearing. For example, ORS 757.480 requires Commission approval before a public utility may sell property valued in excess of $100,000. The sale of such property removes it from the utility's rate base and, thus, necessarily would have some effect on rates. Plaintiffs' proposed interpretation would have the effect of amending ORS 757.480 and other statutes like it to require a rate case proceeding where the legislature has declined to impose such a requirement in the wording of the statute itself. We are required not to engage in such judicial recrafting of the leg-islature's handiwork. ORS 174.010.

■ Plaintiffs nevertheless insist that

> "[a]s ratepayers were entitled to an evidentiary hearing prior to [the Commission's] decisions having the effect of changing utility rates, the [Commission's] refusal to conduct such a hearing violates the federal due process clause as well as the Oregon Constitution."

In making the argument, however, plaintiffs assume that they were statutorily entitled to a hearing in the first place. As we have determined, however, the assumption is illfounded. We therefore also reject plaintiffs' constitutional argument that the Commission erred in approving the merger application without first conducting a rate case proceeding.

Plaintiffs' other arguments do not require discussion.

Affirmed.