Argued and submitted May 12, affirmed October 27, 2004

INDUSTRIAL CUSTOMERS OF
NORTHWEST UTILITIES,
an Oregon non-profit association;
and Citizens' Utility Board,
an independent non-profit public corporation,
*Appellants,*

*v.*

PUBLIC UTILITY COMMISSION OF OREGON,
an agency of the State of Oregon,
*Respondent,*

*and*

PACIFICORP,
an Oregon corporation,
*Intervenor-Respondent.*

02C-18320; A121791

100 P3d 1072

*See also* 189 Or App 87, 74 P3d 113.

Melinda J. Davison and Jason Eisdorfer argued the cause for appellants. With them on the joint opening brief were Matthew W. Perkins and Davison Van Cleve, PC. On the joint reply brief was Irion Sanger.

Stephanie Andrus, Assistant Attorney General, argued the cause for respondent Public Utility Commission of Oregon. With her on the brief were Hardy Myers, Attorney General, Mary H. Williams, Solicitor General, and Jas. Jeffrey Adams, Senior Assistant Attorney General.

James M. Van Nostrand argued the cause for intervenor-respondent. With him on the brief were Sean E. O'Day and Stoel Rives LLP.

Before Landau, Presiding Judge, and Armstrong and Brewer, Judges.

BREWER, J.

## BREWER, J.

Plaintiffs appeal a circuit court judgment affirming an order of the Public Utility Commission (PUC or the commission) that allowed intervenor PacifiCorp to include in its rates approximately $131 million in deferred excess power costs. Although this is an appeal from the circuit court judgment, we review PUC's order and may reverse only if the order is unlawful, unreasonable, or not supported by substantial evidence. ORS 756.594; ORS 756.598; *Pacific Northwest Bell Telephone Co. v. Eachus*, 135 Or App 41, 44, 898 P2d 774, *rev den*, 322 Or 193 (1995). We affirm.

To place the facts of this case in context, a brief discussion of the general legal principles in play is helpful. Utility rates are set prospectively based on a utility's anticipated costs and revenues; ordinarily, utilities bear the risk of unforeseen costs but also receive the benefit when revenues are higher then predicted. However, ORS 757.259 provides that, in certain instances, utilities may defer accounting for costs or revenues, usually when one or the other is extraordinarily higher than anticipated. A utility may then apply to PUC for permission to recover (or refund) the deferred amounts through amortization in future rates. When a utility seeks to recover costs, ORS 757.259(5)[1] requires PUC to conduct an earnings review to determine whether the utility can afford to absorb the costs and a rate change proceeding under ORS 757.210(1) to determine whether the proposed rate increase is "just and reasonable." "The commission's final determination on the amount of deferrals allowable in the rates of the utility is subject to a finding by the commission that the amount was prudently incurred by the utility." ORS 757.259(5).

We take the following facts from PUC's order and the record. PacifiCorp operates a large network of power generation and transmission facilities and serves customers in six states. Demand on the company's system is not constant. For example, average monthly systemwide demand is higher

---

[1] During PUC's proceedings in this case, ORS 757.259(5) was numbered ORS 757.259(4). The renumbering reflects amendments to the statute that are not pertinent here. *See* Or Laws 2003, ch 234, § 3.

during the summer and winter months than it is during spring and fall. Demand also varies as a daily matter; usage is higher during the day than it is at night. Demand also varies by region. In warmer states, demand is higher during the summer. In others, like Oregon, demand is higher during the winter. To manage this complex system, PacifiCorp uses a combination of company-owned generating resources and long-term wholesale purchases[2] to meet its average load, which includes both retail and wholesale customers. During peak periods, PacifiCorp augments its long-term resources with purchases made in the short-term wholesale market. Conversely, during off-peak periods, the company has surplus power that it sells in the short-term market. Because the cost of power from the short-term market is more volatile than from other sources, reliance on that market entails some risk. Thus, in planning its resource needs, PacifiCorp historically has attempted to balance its long-term resources and load as closely as possible, generally erring on the side of maintaining a net surplus.

From 1990 to 1995,[3] PacifiCorp's average long-term resources exceeded its average load; in other words, the company sold more short-term power than it bought. During the early part of the 1990s, the company also was able to purchase several new generating plants at favorable terms, giving it an even greater power surplus. Rather than simply disposing of the excess power in the short-term market, PacifiCorp entered into new long-term wholesale sales contracts, which produce more revenue than short-term sales do. The company timed the contracts to expire as retail demand grew so that the power would be available when needed by retail customers. In 1996, based on its projections of its resource/load balance, the company determined that it could enter into 12 new long-term wholesale sales contracts between 1996 and 1998 and serve those contracts from surplus resources. Each new contract was timed to expire after three to five years.

---

[2] Wholesale transactions are considered long term if the contractual period is more than a year.

[3] The record does not contain data for the years before 1990.

PacifiCorp's resource/load projections proved to be inaccurate. Beginning in 1996, the company experienced a net resource deficit. By 1996, however, changes had begun to occur in the wholesale power market. The addition of new entrants into the market increased competition among suppliers, resulting in lower prices. Heavier than normal hydroelectric output added further downward pressure on prices. PacifiCorp concluded that it could rectify its resource deficit more cost effectively by increasing market purchases than by increasing its internally generated output.

In 2000 and 2001, extremely low rainfall, a catastrophic generator failure at its "Hunter 1" plant, and the sale of its Centralia, Washington, plant reduced PacifiCorp's generating capacity significantly. During the same period, retail demand grew more quickly than PacifiCorp had anticipated. Had it not been for those events, by the end of 2000, as a number of its long-term sales contracts expired, the company would have returned to a net surplus power position in the short-term market. Instead, PacifiCorp's reliance on the short-term market grew substantially in 2000 and lessened only slightly in 2001. Because the "western power crisis" was under way, market prices were extremely high.

In 2000, PacifiCorp sought permission from PUC to defer the excess power costs incurred in the short-term market. PUC granted the request for a period of approximately 10 months beginning on November 1, 2000.[4] After the deferral period ended in 2001, PacifiCorp sought to amortize approximately $160 million through subsequent rate increases. Plaintiffs objected, contending that the costs were in part attributable to the long-term wholesale sales contracts. In plaintiffs' view, the contracts reflected an aggressive and risky management strategy designed to increase Pacificorp's market share in order to boost profits. They argued, among other things, that the wholesale contracts

---

[4] In the order granting the request, PUC established a sharing mechanism by which PacifiCorp would absorb a portion of the excess costs. Ultimately, during the deferral period, PacifiCorp incurred approximately $259 million in excess power costs attributable to Oregon (PacifiCorp operates in five other states as well). The sharing mechanism reduced that amount to $160 million. PacifiCorp appealed that order, which we ultimately affirmed. *PacifiCorp v. Public Utility Commission*, 189 Or App 87, 74 P3d 113 (2003).

were intended solely to benefit PacifiCorp's shareholders. Industrial Customers of Northwest Utilities (ICNU) contended that, as part of a prudence review, PUC must examine "whether the costs that the utility seeks to include in rates provide a net benefit to the Company's customers." ICNU argued that costs associated with utility activities that do not benefit ratepayers are not recoverable in rates. Citizens' Utility Board (CUB) argued that "PacifiCorp's overall management strategy reflected in its wholesale contracts * * * should be deemed imprudent 'to the degree that it forced PacifiCorp into the short-term market.' "[5]

After conducting the prudence review, PUC concluded that the record before it supported full recovery of the excess power costs less the effect of the sharing mechanism, $160 million. It made a number of findings relating to PacifiCorp's wholesale activities. The commission accepted PacifiCorp's contention that the growth in wholesale sales was in response to market opportunities rather than being attributable to a shift in management strategy. PUC also noted that PacifiCorp's 1996 RAMPP-4 analysis had indicated that the company would not need new resources until 1999. The commission stated that "PacifiCorp reasonably decided to take advantage of the low[-]cost power market to meet its requirements." The commission found that PacifiCorp had acted prudently when it entered into the disputed wholesale contracts.

In response to ICNU's assertion that costs associated with the wholesale contracts did not provide any ratepayer benefit, PUC stated simply, "We apply a net benefits standard in certain specific instances. We are not applying the net benefits test in this case." As to CUB's arguments, PUC went on to state:

---

[5] Plaintiffs raised other arguments, including the contention that costs incurred to replace power lost as a result of the Hunter 1 breakdown were imprudently incurred because, plaintiffs alleged, PacifiCorp had been negligent in maintaining, operating, and inspecting the Hunter 1 facility. Plaintiff ICNU also objected to PacifiCorp's alleged failure to secure adequate replacement power following the sale of its Centralia plant. PUC ultimately found those and other arguments unpersuasive, and plaintiffs do not renew them on appeal. Accordingly, we do not address them.

"The flaw with CUB's argument, as we see it, is that it was not the wholesale contracts that forced PacifiCorp into the short-term market. Rather, it was the concatenation of factors that PacifiCorp has cited throughout the case: the poor hydro year, the sale of [the Centralia generating plant], retail load growth, and the loss of Hunter 1 power. Absent those factors, PacifiCorp has persuaded us that it would not have been in a short position."

In other words, the commission found that, but for the "concatenation of factors," PacifiCorp would once again have had a net surplus of power during the deferral period.

During the proceedings before PUC, PacifiCorp and PUC staff had entered into a stipulation in which PacifiCorp agreed to a disallowance of 15 percent of its excess power costs as a means of resolving any prudence issues. Although PUC concluded that full recovery was warranted, it adopted the stipulation. It entered an order permitting PacifiCorp to recover $131 million in future rates. Plaintiffs challenged PUC's order in a complaint filed in the trial court. ORS 756.580. That court denied relief, and this appeal ensued.

Plaintiffs raise three assignments of error. First, they argue that PUC erred in refusing to apply the net benefit standard. Plaintiffs contend that legislative policy and the commission's prior practices required PUC to apply that standard or, at a minimum, to explain why it declined to apply it. Second, plaintiffs assign error to the commission's conclusion that PacifiCorp met its burden of proof. Plaintiffs take the view that the utility's initial filing of testimony and exhibits was inadequate to prove that its excess power costs related to the disputed contracts were prudently incurred. Third, plaintiffs argue that PUC's order is not supported by substantial evidence.[6]

---

[6] In their third assignment of error, plaintiffs also contend that PUC erred in failing to consider the conclusions of the commission's counterparts in Wyoming and Utah, which rejected similar requests by PacifiCorp to recover excess power costs attributable to those states. PUC is not required to consider decisions from other jurisdictions. Accordingly, its failure to do so was not unlawful; nor, under the circumstances here, was it unreasonable. We reject plaintiffs' argument without further discussion.

We begin with plaintiffs' third assignment of error because our resolution of it disposes of their other assignments as well. Plaintiffs challenge several of the factual findings underlying PUC's conclusion that PacifiCorp's wholesale marketing strategy in general and the disputed contracts in particular were prudent. Briefly, plaintiffs contend that PacifiCorp

> "did not establish a basis upon which to conclude that it prudently entered [into] the disputed contracts or that including the costs of purchasing expensive power to serve the disputed contracts in rates was just and reasonable. As a result, the commission's decision to allow PacifiCorp to recover these amounts in rates was not supported by substantial evidence and reflects an invalid application of the law."

PUC responds by pointing to evidence in the record that supports each of its factual findings and legal conclusions. Importantly, it highlights, among other things, the evidence showing that PacifiCorp's reliance on the short-term market increased as a result of its reduced generating capacity.

Plaintiffs' argument is not well taken. The ultimate issue in this case is whether PUC's order allowing PacifiCorp to recover the excess power costs that it incurred in the short-term market is unreasonable or unlawful. As the parties seeking to set aside the commission's order, plaintiffs bear the burden "to show by clear and satisfactory evidence that the order is unreasonable or unlawful." ORS 756.594. With that in mind, it is important to recognize the arguments that plaintiffs do not make. As noted, PUC found that "it was not the wholesale contracts that forced PacifiCorp into the short-term market." Plaintiffs do not dispute PUC's findings that PacifiCorp's generating capacity was reduced and that its retail load had increased more than expected. They do not argue that PacifiCorp responded imprudently to those circumstances. Nor do they dispute PUC's conclusion that, but for those circumstances, PacifiCorp would have had sufficient resources to satisfy both its wholesale and retail obligations. Finally, they do not argue that PUC's finding that the excess power costs were wholly attributable to the reduction in generating capacity and growth in retail load is not

supported by substantial evidence. Plaintiffs merely argue for a different view of what caused the excess power costs.

Plaintiffs' argument—that, but for the wholesale contracts, PacifiCorp would not have been forced into the short-term market to the extent that it was—misses the point. The function of judicial review of PUC orders is not to substitute one view of the facts for another. *See* ORS 756.598(1) (providing, in part, that "the court shall not substitute its judgment for that of the Public Utility Commission as to any finding of fact supported by substantial evidence"). The record shows that long-term wholesale sales have for many years been a part of PacifiCorp's business, and those sales have always contributed to the degree to which the company must buy power in the short-term market. The extent to which such sales "forced PacifiCorp into the short-term market" during the deferral period was not significantly different from what it was before 1996. Although the company oversold its system between 1996 and 2000, the exposure to the short-term market caused by the sales had been mitigated by the time the deferral period began in November 2000.

Substantial evidence and reason support PUC's finding that the excess power costs were caused by PacifiCorp's reduced generating capacity and increased retail load rather than by the wholesale contracts. We are bound by that finding. *Id.* The fact that PUC proceeded, after making its finding, to analyze the contracts for prudence is of no moment. Even if we were to conclude that the commission's findings with respect to the prudence of the contracts are unsupported or its conclusions unreasonable, we cannot disregard its finding that "it was not the wholesale contracts that forced PacifiCorp into the short-term market."

The issues raised by plaintiffs in their first two assignments of error relate solely to the disputed wholesale contracts. With respect to the first assignment of error, in light of PUC's finding that the contracts did not cause the excess power costs, we need not decide whether the commission analyzed the contracts under the correct standard. We also need not address plaintiffs' second assignment of error, in which they argue that PUC allowed PacifiCorp to use an approach that effectively created a presumption that all costs

were prudently incurred unless plaintiffs proved otherwise. In plaintiffs' view, all costs relating to the contracts should have been presumed imprudent, with the company shouldering the burden to prove the contrary. However, plaintiffs do not contend that PacifiCorp failed to prove that it responded prudently to the "concatenation of factors" that forced PacifiCorp into the short-term market. Because PUC found that those factors were the sole cause of the excess power costs, and substantial evidence supports that finding, PacifiCorp had no other evidentiary burden to meet. Accordingly, we need not decide whether PUC improperly shifted the burden of proof with respect to the prudence of entering into any of the disputed contracts. *Cf. Pacific Northwest Bell Telephone Co.*, 135 Or App at 56-57 (stating that the conclusion that PUC was not required to apply a ratepayer benefit standard obviated the need to address whether the commission had erroneously placed the burden of proof on its staff to show that challenged expenses benefitted ratepayers).

Plaintiffs do not challenge any other aspect of PUC's order in this appeal. We therefore conclude that plaintiffs have failed to establish that the order is unreasonable, unlawful, or not supported by substantial evidence.

Affirmed.