Argued and submitted June 13, judgment vacated and remanded to circuit court
with instructions to remand Order No. 02-227 to PUC for reconsideration of issues
raised on appeal and cross-appeal October 10, 2007

# UTILITY REFORM PROJECT,
Lloyd K. Marbet, and Linda K. Williams,
*Plaintiffs-Respondents*
*Cross-Appellants,*

*v.*

# OREGON PUBLIC UTILITY COMMISSION,
*Defendant-Appellant*
*Cross-Respondent,*

*and*

# PORTLAND GENERAL ELECTRIC COMPANY,
*Intervenor-Appellant*
*Cross-Respondent.*

Marion County Circuit Court
02C14884; A123750

170 P3d 1074

See also 154 Or App 702, 962 P2d 744.

Barbee B. Lyon argued the cause for appellant-cross-respondent Portland General Electric Company. With him on the briefs was Tonkon Torp LLP.

Denise Fjordbeck, Senior Assistant Attorney General, argued the cause for appellant-cross-respondent Oregon Public Utility Commission. With her on the briefs were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General. On the supplemental brief was Judy C. Lucas, Assistant Attorney General

Daniel W. Meek argued the cause and filed the briefs for respondents-cross-appellants.

Linda K. Williams filed the brief *amicus curiae* for Class Action Plaintiffs.

James N. Westwood and Stoel Rives LLP filed the brief *amicus curiae* for Northwest Natural Gas Company and PacifiCorp.

Before Edmonds, Presiding Judge, and Brewer, Chief Judge,* and Sercombe, Judge.

EDMONDS, P. J.

---

* Brewer, C. J., *vice* Wollheim, J.

**EDMONDS, P. J.**

Defendant Oregon Public Utility Commission (the PUC) and intervenor Portland General Electric Company (PGE) appeal a judgment of the Marion County Circuit Court that reversed and remanded PUC Order No. 02-227 to the PUC. Plaintiffs Utility Reform Project (URP), Lloyd K. Marbet, and Linda K. Williams cross-appeal. For the reasons that follow, we conclude that the PUC's order was based, in part, on an erroneous conclusion of law and therefore must be remanded to the PUC for reconsideration. We further conclude that the judgment of the circuit court contained an erroneous remand instruction to the PUC and must be vacated. Accordingly, we vacate the circuit court's judgment and remand to the circuit court with instructions to remand Order No. 02-227 to the PUC for reconsideration.

## I. BACKGROUND

Our resolution of this appeal is inextricably intertwined with the lengthy procedural history of a dispute concerning one of PGE's former generating facilities, the Trojan nuclear power plant. When Trojan first went into service in 1976, the PUC established PGE's rates at an amount intended to allow PGE to recover its investment in Trojan over a 35-year period (*i.e.*, until 2011). After technical problems and breakdowns, PGE closed Trojan in 1993, long before PGE had recouped its investment.

In the years between 1976 and 1993, legislative and agency action shaped and reshaped the avenues by which PGE could recover its investment in Trojan. Two years after the plant went into service, Oregon voters approved Ballot Measure 9 (1978), codified as ORS 757.355 (1979). That statute provided that a public utility may not

"directly or indirectly, by any device, charge, demand, collect or receive from any customer rates which are derived from a rate base which includes within it any construction, building, installation or real or personal property not presently used for providing utility service to the customer."

In short, under the statute, the costs of a plant not "presently" providing service to customers must be excluded from the utility's rates.

In 1989, the PUC effected a regulatory concept known as "least cost" planning. The concept required utilities to provide services at the least cost to ratepayers, even if that meant closing particular plants. As part of the "least cost" planning concept, the PUC asked the legislature to enact a statute that would encourage a utility to close a plant when continued operation is no longer in the public's interest. In response, the legislature enacted ORS 757.140(2), which provides:

> "In the following cases the [PUC] may allow in rates, directly or indirectly, amounts on the utility's books of account which the [PUC] finds represent undepreciated investment in a utility plant, including that which has been retired from service:
>
> "(a)  When the retirement is due to ordinary wear and tear, casualties, acts of God, acts of governmental authority; or
>
> "(b)  *When the [PUC] finds that the retirement is in the public interest.*"

(Emphasis added.)

In 1992, PGE sought to take advantage of ORS 757.140(2)(b) and presented a "least cost" plan to the PUC to take Trojan out of service. The following year, the PUC issued an order finding that the decision to close Trojan under a "least cost" theory was "reasonable." PUC Order No. 93-804.[1] PGE then asked the PUC for a declaratory ruling as to the propriety of charging the undepreciated portion of its Trojan investment to PGE ratepayers. The PUC opened a proceeding on that question, and two public interest groups—the Citizens' Utility Board of Oregon (CUB) and URP—intervened. CUB argued that PGE was prohibited

---

[1] We take judicial notice of the PUC orders referenced in this opinion. OEC 202(2) (law judicially noticed includes the "[p]ublic and private official acts of the legislative, executive and judicial departments of this state"); *Douglas Electric v. Central Lincoln PUD*, 164 Or App 251, 255 n 1, 991 P2d 1060 (1999), *rev den*, 331 Or 283 (2000) (taking judicial notice of PUC orders under OEC 202(2)).

from including in its rate base a return *on* its Trojan investment, even if it could recover its undepreciated investment *in* the plant. URP argued further that, under ORS 757.355, PGE could not include any aspect of its Trojan investment in the rates. At the close of that proceeding, the PUC issued Order No. 93-1117, rejecting CUB's and URP's arguments and declaring that, if PGE met certain conditions and could show certain "assumed facts," then PGE could include in its rates both a "return of" and a "return on" its Trojan investment. CUB and URP sought review in the Marion County Circuit Court pursuant to *former* ORS 756.580 (1993), *repealed by* Or Laws 2005, ch 638, § 21.[2] The circuit court affirmed, and CUB and URP appealed to this court.

Meanwhile, the PUC conducted a proceeding to determine whether the "assumed facts" and required conditions identified in Order No. 93-1117 in fact existed. CUB and URP intervened, reiterating the arguments that they had made in the declaratory ruling proceeding. Ultimately, the PUC allowed PGE to include in its rate base a "return of" and "return on" the Trojan investment. PUC Order No. 95-322. The rates went into effect immediately, even though CUB and URP filed an action in Marion County Circuit Court seeking to "modify, vacate or set aside" the order. The circuit court ultimately agreed with CUB and reversed the order on the ground that PGE was not entitled to include a "return on" the Trojan investment. The PUC appealed, and the appeal was consolidated with the earlier appeal by CUB and URP from Order No. 93-1117.

In *Citizens' Utility Board v. PUC*, 154 Or App 702, 962 P2d 744 (1998), we considered the consolidated appeal. We affirmed the circuit court's decision in the rate proceeding and reversed the circuit court's decision in the declaratory ruling proceeding. We concluded that, under ORS 757.140(2) and ORS 757.355, rates are permitted to compensate utilities for the principal amount of their undepreciated investment in a retired facility in some circumstances, but that ORS

---

[2] Under *former* ORS 756.580, challenges to PUC orders were commenced by filing a complaint in Marion County Circuit Court. In 2005, the legislature changed the method of judicial review of PUC orders. Now, PUC orders are reviewed as orders in contested cases subject to the provisions of ORS 183.480 to 183.497. ORS 756.610.

757.355 prohibits utilities from including in their rates a return on their investment in unused or retired property. 154 Or App at 716. That is, we held that PGE could recover a "return of" but not a "return on" its investment in Trojan because of the prohibition in ORS 757.355. *Id.*

PGE and the PUC petitioned for review of our decision, and the Supreme Court granted review in 1999. The court held the case in abeyance, however, because it appeared that certain superseding events could render the petition moot. First, the PUC sought to legislatively overrule our decision in *Citizens' Utility Board* via House Bill (HB) 3220 (1999). Second, and before the fate of HB 3220 was determined,[3] PGE and CUB agreed to a settlement. Under the terms of the settlement, the remaining Trojan investment balance (calculated to be $180.5 million) and certain tax liabilities relating to Trojan were offset against certain existing balances in favor of PGE's ratepayers. PGE then applied to the PUC for an accounting order and revised rate schedules implementing the terms of the settlement, and the PUC approved the request. PUC Order No. 00-601. The Supreme Court then dismissed the petition for review in *Citizens' Utility Board*. 335 Or 91, 58 P3d 822 (2002).

Meanwhile, before the Supreme Court dismissed the petition for review, URP—which was not a party to the settlement—filed a complaint before the PUC challenging the schedule of rates in PUC Order No. 00-601. URP advanced what the PUC characterized as "six principal arguments" in opposition to the rates implemented by the settlement: (1) the rates failed to provide any mechanism for recovery of money that, pursuant to *Citizens' Utility Board*, PGE had collected unlawfully between 1995 and 2000 as a "return on" its Trojan investment; (2) the settlement provided PGE with the "functional equivalent" of a return on the Trojan investment and indirectly created the same outcome that was prohibited under *Citizens' Utility Board* and ORS 757.355; (3) the treatment of certain tax liabilities ("FAS 109" liability) constituted phantom bookkeeping; (4) the settlement expropriated from

---

[3] HB 3220, which would have allowed utilities to structure rates to recover return on their investments in certain retired plants, was passed by the legislature, but was referred to the people. It was rejected in the November 2000 election.

ratepayers certain proceeds from PGE's Nuclear Electric Insurance Limited ("NEIL") policy; (5) the settlement incorrectly calculated the remaining Trojan investment because it improperly included construction work in progress (CWIP) expenses; and (6) "miscellaneous claims" regarding the Trojan balance, the net benefit analysis used by PUC staff and PGE, and the exclusion of certain responses of URP's expert to PGE's data requests.

In Order No. 02-227, the order that is the subject of this appeal, the PUC rejected each of URP's arguments challenging the schedule of rates in PUC Order No. 00-601. A detailed discussion of Order No. 02-227 is unnecessary at this point. We simply note that, with respect to URP's argument that the rates failed to provide a mechanism for the recovery of previously, unlawfully collected rates, the PUC determined that it had no authority to order refunds. The PUC reasoned that URP's premise "violates the filed rate doctrine, which is embodied in Oregon law in ORS 757.225[.]" That statute provides:

> "No public utility shall charge, demand, collect or receive a greater or less compensation for any service performed by it within the state, or for any service in connection therewith, than is specified in printed rate schedules as may at the time be in force, or demand, collect or receive any rate not specified in such schedule. The rates named therein are the lawful rates until they are changed as provided in ORS 757.210 to 757.220."

According to the PUC, "[t]he statute does not allow for retroactive changes pursuant to court decision or otherwise."

URP then filed an action in Marion County Circuit Court, seeking review of PUC Order No. 02-227. Before the circuit court, URP renewed its arguments that the rates were unlawful because they failed to account for amounts that ratepayers had previously been required to pay to PGE as a "return on" the Trojan investment. The circuit court agreed with URP and concluded

> "that the Commission erred in applying the so-called filed rate doctrine to preclude relief to recover past unlawful charges, and that, as a direct result, the rates approved in OPUC Order No. 02-227 are neither just nor reasonable. As

part of the adjustment of offsetting charges and liabilities related to the Trojan writeoff, PGE should have been required to account for all refunds due to ratepayers for these unlawfully collected rates as a matter of law."

Accordingly, the court reversed and remanded Order No. 02-227 to the PUC

"with directions to immediately revise and reduce the existing rate structure so as to fully and promptly offset and recover all past improperly calculated and unlawfully collected rates, or alternatively, to order PGE to immediately issue refunds for the full amount of all excessive and unlawful charges collected by the utility for a return on its Trojan investment as previously determined to be improper by both this Court and the Court of Appeals."

The PUC and PGE both appealed that judgment, which is the case that is before us now.

Various other Trojan-related proceedings, however, have continued contemporaneously with this appeal. The appellate judgment in *Citizens' Utility Board* issued in January 2003, after the Supreme Court dismissed the petition for review. In November 2003, pursuant to the appellate judgment, the Marion County Circuit Court remanded the orders at issue in *Citizens' Utility Board* to the PUC for further proceedings consistent with our opinion. The PUC also had before it the circuit court's remand of Order No. 02-227. Faced with concurrent remands of four orders, the PUC undertook joint remand proceedings, including the remand of Order No. 02-227, which was not stayed while this case was pending on appeal. And, in Order No. 04-597, the PUC approved undertaking a retrospective examination of rates as part of the joint remand proceedings.

Also while this case was pending on appeal, and while the joint remand proceedings were underway before the PUC, the Supreme Court decided *Dreyer v. PGE*, 341 Or 262, 142 P3d 1010 (2006), which involved yet another related case. Two weeks after the appellate judgment issued in *Citizens' Utility Board,* and before the joint remand proceedings began, certain past and present ratepayers filed an action in Marion County Circuit Court seeking a refund of all amounts that ratepayers had paid between April 1, 1995 and

October 1, 2000, that constituted a return on PGE's Trojan investment. PGE subsequently filed petitions for writs of mandamus asking the Supreme Court to order the circuit court to dismiss the plaintiffs' complaints or, alternatively, to order the circuit court to vacate its order certifying the cases as class actions.

In its petitions to the Supreme Court, PGE first argued that the complaints should be dismissed because none of the plaintiffs' four claims had any basis in the law. The plaintiffs' first claim alleged that, under ORS 756.185,[4] they were entitled to a return of the unlawfully collected "return on investment" charges. PGE argued that that claim was barred by the filed-rate doctrine embodied in ORS 757.225, and that any rates that PGE collected during the relevant period were conclusively lawful and were the only rates that PGE was permitted to collect. The Supreme Court rejected PGE's construction of ORS 757.225:

> "We * * * agree with plaintiffs that ORS 757.225 is most reasonably read as a direction to utilities to charge all their ratepayers the PUC-approved rate and, if a utility is dissatisfied with a rate, to obtain a new PUC-approved rate through the process set out at ORS 757.210 to 757.220. The statute is not aimed, as PGE suggests, at conclusively and permanently binding the entire world to the rate decisions of the PUC."

---

[4] ORS 756.185 provides:

"(1) Any public utility which does, or causes or permits to be done, any matter, act or thing prohibited by ORS chapter 756, 757 or 758 or omits to do any act, matter or thing required to be done by such statutes, is liable to the person injured thereby in the amount of damages sustained in consequence of such violation. If the party seeking damages alleges and proves that the wrong or omission was the result of gross negligence or willful misconduct, the public utility is liable to the person injured thereby in treble the amount of damages sustained in consequence of the violation. Except as provided in subsection (2) of this section, the court may award reasonable attorney fees to the prevailing party in an action under this section.

"(2) The court may not award attorney fees to a prevailing defendant under the provisions of subsection (1) of this section if the action under this section is maintained as a class action pursuant to ORCP 32.

"(3) Any recovery under this section does not affect recovery by the state of the penalty, forfeiture or fine prescribed for such violation.

"(4) This section does not apply with respect to the liability of any public utility for personal injury or property damage."

341 Or at 279. Because the Supreme Court rejected PGE's contention that the plaintiffs' first claim had no basis in law, it declined to order the circuit court to dismiss the complaints. *Id.* at 279-80.

Although the court ultimately determined that the circuit court had no duty to dismiss the plaintiffs' complaints, it nonetheless held that the circuit court had a legal duty to abate the proceedings.[5] The court invoked the doctrine of primary jurisdiction, a doctrine that allows a court to decide " 'that an administrative agency, rather than a court of law, initially should determine the outcome of a dispute or one or more issues within that dispute that fall within that agency's statutory authority.' " 341 Or at 283 (quoting *Boise Cascade Corp. v. Board of Forestry*, 325 Or 185, 192, 935 P2d 411 (1997)).

The court explained the interplay between the various concurrent proceedings in the courts and the PUC:

"[A]n essential component of plaintiffs' claim is that they were injured by PGE's collection and retention of rates that were based in part on amounts unlawfully representing PGE's investment in the defunct Trojan facility. We also note that, even before plaintiffs filed their actions, the PUC had received two remands from the courts, at least one of which clearly contemplated that the PUC would fashion a remedy for those very injuries. Finally, we note that the PUC now is engaged in carrying out those remands in a single proceeding.

"Although plaintiffs vigorously deny it, the PUC proceeding that is underway thus has the potential for disposing of the central issue in these cases, *viz.*, the issue whether plaintiffs have been injured (and, if they have been, the extent of the injury). In that regard, we note that the PUC has been instructed either to revise and reduce rates to offset the previous 'improperly calculated and unlawfully collected rates' or to order PGE to issue refunds. Depending on how the PUC responds to that remand, some or all [of plaintiffs'] claimed injuries may cease to exist.

---

[5] The court also rejected PGE's other arguments for dismissal to the effect that the plaintiffs' complaints were time barred, amounted to a collateral attack on final orders of the PUC, and raised matters of utility regulation that are beyond the jurisdiction of the circuit court. 341 Or at 280-82.

Moreover, the PUC's specialized expertise in the field of ratemaking gives it primary, if not sole, jurisdiction over one of the remedies contemplated in the remand: revision of rates to provide for recovery of unlawfully collected amounts. Certainly, if the PUC decides to take that approach to the problem, its special expertise makes it a far superior venue for determining that remedy."

341 Or at 284-85 (footnotes omitted).

The court concluded:

"[T]he PUC has primary jurisdiction to determine what, if any, remedy it can offer to PGE ratepayers, through rate reductions or refunds, for the amounts that PGE collected in violation of ORS 757.355 (1993) between April 1995 and October 2000. If the PUC determines that it can provide a remedy to ratepayers, then the present actions may become moot in whole or in part. If, on the other hand, the PUC determines that it cannot provide a remedy, and that decision becomes final, then the court system may have a role to play. Certainly, after the PUC has made its ruling, plaintiffs will retain the right to return to the circuit court for disposition of whatever issues remain unresolved, including the question of a fee award. That is the way that abatement is supposed to work. Until the PUC has had the opportunity to do its work, parallel circuit court litigation is duplicative and unnecessary. It should be abated. Accordingly, we issue a peremptory writ ordering the circuit court to abate the present actions."

*Id.* at 286-87.

## II. ISSUES ON APPEAL

In light of the above history, we return to the issues on appeal in this case. As stated above, this appeal concerns Order No. 02-227, which rejected URP's challenge to the rates implemented in the settlement agreement reached by PGE and CUB. The Marion County Circuit Court ruled that the rates approved in that order were "neither just nor reasonable" because the PUC erred as a matter of law in concluding that ORS 757.225 precluded it from addressing the recovery of past, unlawful charges when determining the offsetting charges and liabilities related to Trojan. The court then ordered the PUC to revise the rate structure to address the unlawful charges or to provide a refund to ratepayers.

■ Although this is an appeal from the circuit court judgment, we review a PUC order directly to determine whether it is unreasonable or unlawful. *Former* ORS 756.594 (2003), *repealed* by Or Laws 2005, ch 638, § 21; *Former* ORS 756.598 (2003), *repealed* by Or Laws 2005, ch 638, § 21; *see also Industrial Customers of Northwest Utilities v. PUC*, 196 Or App 46, 49, 100 P3d 1072 (2004); *Low-Income Consumers Union v. PUC*, 150 Or App 491, 494, 946 P2d 1164 (1997), *rev den*, 327 Or 83 (1998). We may not substitute our judgment for that of the PUC on any finding of fact supported by substantial evidence. *Former* ORS 756.598 (2003).

> "Whether or not we agree with PUC's inferences or reasoning, we will uphold PUC's order if it discloses a rational relationship between the facts and the legal conclusion reached. The order, however, must contain sufficient findings and conclusions to enable us to determine that the reasoning is rational and that PUC acted within its grant of power."

*Pacific Northwest Bell Telephone Co. v. Katz*, 116 Or App 302, 305, 841 P2d 652 (1992), *rev den*, 316 Or 528 (1993).

Order No. 02-227 was based, in significant part, on the premise that ORS 757.225 "does not allow for retroactive changes pursuant to court decision or otherwise." Thus, in determining the Trojan balance—and whether the rates set out in the settlement would be just and reasonable—the PUC refused to consider any rates that PGE collected from ratepayers that constituted a "return on" the Trojan investment. In fact, the PUC determined that it would be "premature" to address the issue of unlawfully collected amounts because *Citizens' Utility Board* was, at the time, pending in the Supreme Court.

■ In their opening briefs on appeal, both the PUC and PGE argued that the PUC correctly relied on the filed-rate doctrine embodied in ORS 757.225.[6] The PUC and PGE now

---

[6] PGE also has asked this court to overrule its previous decision in *Citizens' Utility Board*, based on additional legislative history regarding ORS 757.225. We are not convinced, based on our review of the additional arguments made by PGE, that our previous decision was "plainly wrong." *See State v. Kittel*, 203 Or App 736, 740, 127 P3d 1204 (2006) ("We will not overrule our own statutory interpretations unless they are 'plainly wrong.' ").

concede that, to the extent that their arguments for reversing the circuit court's judgment were premised on ORS 757.225, those arguments have been eviscerated by the Supreme Court's construction of that statute in *Dreyer*.[7] That is, after *Dreyer*, it is clear that the PUC based its conclusions in Order No. 02-227, in part, on an incorrect understanding of ORS 757.225.[8]

■ In light of that error of law, we cannot determine whether there is a rational relationship between the facts and the legal conclusions reached by the PUC. Whether the rates established by Order No. 02-227 are unlawful or unreasonable depends, in part, on the correct calculation of the Trojan balance, including the proper treatment of any charges collected unlawfully by PGE. It is possible that, for reasons apart from ORS 757.225, the PUC would conclude that it has no authority to engage in retroactive ratemaking or to issue a refund.[9] It is also possible that the PUC would conclude that, absent any prohibition in ORS 757.225, it does, in fact, have authority to issue refunds or otherwise account for unlawfully collected charges. In any event, we conclude that the PUC should be the first to consider those issues in light of *Dreyer*, the appellate judgment in *Citizens' Utility Board*, and the joint remand proceedings that are currently underway before the PUC. *See former* ORS 756.598 (2003) (providing that the court may "affirm, modify, reverse *or remand the order*"); *see also Northwest Natural Gas Co. v.*

---

[7] Following the *Dreyer* decision, PGE also moved in this court (1) for summary reversal of the circuit court judgment, (2) to allow the parties to file revised briefs, and (3) alternatively, to abate the appeal. We denied the motions for summary reversal and to abate the appeal, but granted the motion to file revised briefs.

[8] We acknowledge that, in addition to relying on ORS 757.225, the PUC provided alternative bases for determining that the rate change established by Order No. 02-227 "is in the public interest, and will result in just and reasonable rates[,]" such as the prospective nature of the rate change and that a "refund would create an incentive that is contrary to our policy." Those alternative bases were intertwined with the PUC's incorrect understanding of ORS 757.225, and it is unclear whether the PUC would have reached similar conclusions concerning those alternative bases had it had the benefit of the Supreme Court's decision in *Dreyer*.

[9] The Supreme Court in *Dreyer* acknowledged that the PUC may ultimately determine that it has no authority to make retroactive adjustments to rates. Even so, the court "cannot sit in review of speculation about what an agency will decide. Moreover, the issue that plaintiffs raise—whether the PUC has authority to order refunds or other retroactive relief—will not be ripe for decision by an appellate court until the PUC acts." 341 Or at 286 n 19.

*PUC*, 195 Or App 547, 559, 99 P3d 292 (2004) ("It is not a court's task to create a basis for the PUC's ultimate conclusion that is different from the basis that the PUC itself expressed. Rather, it is for the PUC on remand to reconsider the issues involved.").

We cannot, however, simply affirm the circuit court's judgment remanding the order to the PUC. The circuit court ruled that the PUC's order flowed from a flawed premise—namely, that PGE did not owe ratepayers anything for previously collected rates pursuant to ORS 757.225. As discussed above, that aspect of the circuit court's ruling is consistent with *Dreyer*. The circuit court then remanded the order to the agency with instructions to revise the rate structure to account for unlawfully collected rates or to order a refund of the unlawfully collected charges.

It is now evident, after *Dreyer*, that the circuit court's remand instructions were erroneous. The circuit court presumed that: (1) the PUC had authority to offer a remedy to ratepayers through rate reductions or refunds of previously collected amounts, and (2) was required to exercise that authority. However, as the Supreme Court explained, there are alternative ways in which ratepayers could attempt to obtain a refund of unlawfully collected amounts: They could seek a refund, as they did in this case, through a rate reduction or refund through the PUC, or they could proceed in circuit court against PGE, as the class action plaintiffs did in *Dreyer*.[10] Whether the former avenue should be utilized, the Supreme Court held, is a matter that should be determined, in the first instance, by the PUC:

> "The PUC also has special expertise with respect to an issue that lurks in the background of this case: Whether the PUC can order refunds or any other form of retroactive relief for amounts that PGE collected in violation of ORS

---

[10] Interestingly, now that *Dreyer* has been decided, URP no longer contends that the PUC has authority to engage in retroactive ratemaking or order refunds. In its supplemental brief, URP states that, "in light of *Dreyer*, we agreed with PGE and [the PUC] that the rate period is sealed and not subject to retroactive change by [the PUC]." That is, URP no longer argues that the PUC has any authority to take past charges into account when setting future rates or to order a refund to ratepayers who have paid unlawful rates. The remedy for ratepayers, URP contends, is instead a direct action against the utility.

757.355 (1993). At times, plaintiffs appear to suggest in their briefing that that issue is irrelevant, because they can proceed in circuit court in any event. At other times, however, plaintiffs seem to suggest that the PUC's refusal or lack of authority to act justifies their actions in circuit court. We think that the issue of [the] PUC's authority *is* relevant: If that agency can and does provide a full or partial remedy, then plaintiffs either are not injured at all or, if they remain injured, their remedy is to seek judicial review of the PUC's order. In the former case, the circuit court can dismiss the actions. In the latter case, the scope of the court's work will be usefully curtailed. *In either event, the issue of the PUC's authority to provide a retroactive remedy is one that, at least initially, belongs before that body.*

"* * * * *

"We conclude, in short, that the PUC has primary jurisdiction to determine what, if any, remedy it can offer to PGE ratepayers, through rate reductions or refunds, for the amounts that PGE collected in violation of ORS 757.355 (1993) between April 1995 and October 2000."

341 Or at 285-86 (emphasis added; footnotes omitted).

Indeed, in the aftermath of *Dreyer*, the PUC commenced a phase of the joint remand proceedings "to investigate [the PUC's] delegated authority to engage in retroactive ratemaking." PUC Order No. 07-157.[11] That phase of the joint remand proceedings appears to be well underway at this point. Thus, the question of the PUC's authority to engage in retroactive ratemaking or to order a refund needs to be decided *by the PUC*. Similarly, if the PUC determines that it has such authority, it must determine whether it will exercise that authority. That is, before the circuit court or this court orders the PUC to provide a refund or engage in retroactive ratemaking regarding Order No. 02-227, the PUC

---

[11] To be clear, the *Dreyer* court did not reject the possibility that Oregon law incorporates some form of the filed-rate doctrine or a rule against retroactive ratemaking; rather, the court rejected "PGE's contention that ORS 757.225 embodies the particular application of the filed-rate doctrine that it espouses[.]" 341 Or at 279 n 14. The court expressly left open the question whether "Oregon accepts the filed-rate doctrine or the corollary rule against retroactive ratemaking." *Id.* at 270 n 10.

must determine—in the agency proceedings that are currently underway—whether it has authority and will exercise its authority to take those actions.

Given the circuit court's incorrect remand instructions, we conclude that the circuit court's judgment must be vacated and the order must be remanded to the PUC for reconsideration in light of the Supreme Court's decision in *Dreyer*, this court's opinion in *Citizens' Utility Board*, and the PUC's own joint remand proceedings.

### III. ISSUES ON CROSS-APPEAL

In its complaint challenging Order No. 02-227, URP made several claims in addition to the claim on which it eventually prevailed. The circuit court rejected those claims on the ground that, "in accordance with the statutory deference afforded to the factual conclusion of the Commission, this Court is simply not permitted to substitute its judgment for that of the Commission on those matters where the evidence is in conflict." URP cross-appeals the circuit court's judgment and argues that the rates were unreasonable and unlawful for those additional reasons.

Because we have vacated the circuit court's judgment and instructed the circuit court to remand the order to the PUC for reconsideration, we need not address URP's alternative bases for remanding the order to the PUC. We recognize that some of the issues in the cross-appeal may arise again on remand to the PUC, but depending on the outcome of the remand, the issues may arise differently or not at all. In addition, for reasons of judicial economy and agency efficiency that are apparent from our discussion of the procedural history of this case, all of the issues relating to Trojan should be resolved in one forum rather than through piecemeal litigation. URP is free to raise the issues identified in its cross-appeal on remand before the PUC and, if necessary, on judicial review.

Judgment vacated and remanded to circuit court with instructions to remand Order No. 02-227 to PUC for reconsideration of issues raised on appeal and cross-appeal.